Ricketts & Whittington vs. Pendleton.

(Decided July 15th, 1859.)

WESLEY RICKETTS and JOHN WHITTINGTON *vs.* ROBERT W. PENDLETON.

An agreement between an endorser and the makers of a negotiable promissory note, that it was not to be delivered as a note endorsed, unless and until a bill of sale of a steamer was executed and delivered by her owners to the makers, and until a first lien was given thereon, by the latter to the endorser, is not, *per se,* evidence in an action on the note by the holder against the endorser.

---

Ricketts & Whittington *vs.* Pendleton.

---

But such an agreement is admissible in evidence in connection with the further proof, that the plaintiffs received the note from the makers with express notice and actual knowledge of the agreement and understanding on which the note was endorsed by the defendant.

From such evidence the jury might infer that the plaintiffs acquiesced in the agreement and accepted the note, subject to its stipulations and conditions.

A defendant may show *by parol*, that a note, on which he is sued as endorser, was delivered as an *escrow*, or that it was delivered to the plaintiff to be held upon a condition to be performed before the interest of the holder could attach.

The certificate of the notary is made, by the Act of 1837, ch. 253, *prima facie* evidence, but, like all other evidence, it must be submitted to the jury and passed upon by them.

The sufficiency in law of the demand and notice, as evidenced by the notarial certificate, to charge the endorser, must be determined by the court.

In the absence of proof to the contrary, the presumption is, that a note is payable at the place where it is *dated*.

When the maker does not reside, and has no place of business, in the State where the note is payable, no demand upon him is necessary in order to charge the endorser.

Facts stated in an exception, as having been *offered to be proved*, must, in the decision by the appellate court, of the points raised by the exception, be taken *as true*.

Rules of court are necessary for the orderly transaction of its business, and where an inferior court, in the proper enforcement of its rules, refuses to permit evidence to be taken after the testimony is closed, and the prayers submitted, its ruling, on such a point, will not be reversed.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit*, brought on the 11th of May 1855, by the appellants, as holders, against the appellee, as endorser of a promissory note for $5000, drawn by H. S. Ward & Co., dated "Baltimore, May 18th, 1854," at four months, payable to the order of the defendant, and by him endorsed. Plea, *non-assumpsit*.

1*st Exception*. The plaintiffs offered in evidence the note and protest, having proved the defendant's endorsement of it. The protest states that the notary, at the request of the Citizens Bank of Baltimore, bearers of the original note, "presented the said promissory note at the Merchant's Exchange, Post Office, and other places of public resort, but could not find any person who would pay said note," wherefore he protested

it, "and, on the same day, addressed written notice to the en-
dorsers of the said promissory note, informing them it had not
been paid, payment therefor having been demanded and re-
fused, and that they would be held responsible for the pay-
ment thereof. Notices for endorsers left at their respective
places of business."

The defendant then proved by Henry S. Ward, a compe-
tent witness, that the signature, "H. S. Ward & Co.," sign-
ed to the note, as makers thereof, is in his handwriting, and
that this firm was composed of himself and James I. Wright.
This witness also proved, that the defendant, Pendleton, wrote
his name on the back of the note at the request of witness.
The counsel for the defendant then proposed to the witness
this question: "Was there any agreement, and what agree-
ment, if any, between you or the firm of H. S. Ward & Co.
and the defendant, under which the latter wrote his name on
the back of said note?" The plaintiffs' counsel objected to
this question and enquired of the witness, whether the plain-
tiffs, or either of them, were or was present at the making of
said agreement? and he replied that neither of them was pre-
sent. The court then enquired of defendant's counsel, what
was their object in proposing this question? The counsel for
the defendant thereupon stated, that they expected to prove
that the defendant wrote his name on the back of said note
under a special agreement with the firm of H. S. Ward &
Co., to the effect that the note was not to be delivered as a
note endorsed by the defendant, unless and until a bill of sale
of the steamer Jewess was executed and delivered by the own-
ers thereof to the said H. S. Ward & Co., and until a first
lien was given by said H. S. Ward & Co., to the defendant,
on said steamer, and that they were informed that they could
prove, and expected and intended to offer proof, that the
plaintiffs received the said note from H. S. Ward & Co., with
express notice and actual knowledge of the agreement and un-
derstanding on which the note was endorsed by the defend-
ant. The plaintiffs still objected to the question, but the court
(LEE, J.) stated, as its opinion, that the agreement, proposed
to be shown to have been made between H. S. Ward & Co.

and the defendant, would not, *per se,* be admissible in evidence, but was admissible in connection with the further facts proposed to be given in evidence on the part of the defendant, and that if the defendant should fail to prove such facts further proposed to be given in evidence, that then the court, on application of the plaintiff's counsel, would instruct the jury, that they should disregard the evidence of the agreement between the said H. S. Ward & Co. and the defendant, in case such agreement, as proposed, shall be proved. To this ruling the plaintiffs excepted.

*2nd Exception.* In addition to the matters and evidence stated in the first exception, the defendant proved by the witness, Ward, the agreement between Ward & Co. and the defendant, as stated in the first exception, and that it was made in the hearing of Ricketts, one of the plaintiffs, and if he did not hear it, he might have heard it, as it was audibly stated and talked of in his presence, at the time the note was made, endorsed and delivered to him. This witness also proved the violation of this agreement by the conveyance of the steamer to James I. Wright instead of the firm of H. S. Ward & Co., and that neither of the makers of the note resided, or had any place of business, in Maryland, at the time the note was made, or when it became due.

The plaintiffs then, having first proved its due execution, offered in evidence a written contract between the plaintiffs and Wright, dated the 12th of April 1854, by which the former agreed to sell to the latter the Jewess for $30,000, of which $10,000 was to be paid in cash on delivery, and the balance in four and six months, in approved negotiable notes, Wright to have ten days to complete the terms of sale. They then further proved by their book-keeper and clerk, who were present when this note was executed and delivered, that there were present, at that time, in the counting-room of the plaintiffs, the defendant, Ward, Wright, Ricketts, witnesses, and perhaps others; that the above contract was, on that occasion, read in the hearing of defendant, Ward, and Wright, as the contract between the plaintiffs and Wright for the purchase of the Jewess, and was placed, by Ricketts, in the hands of

defendant, and after the latter had heard it read Ward signed the name of H. S. Ward & Co., as makers of the note, payable to the order of the defendant, who then endorsed it and delivered it to the plaintiffs in part payment of the purchase money for the steamer; that at this interview, when the note so passed, these witnesses, though paying particular attention to what was passing, heard nothing said by any person that the note was not to be used until a mortgage was given to secure the defendant for his endorsement, or that any transfer of the steamer was to be made to H. S. Ward & Co.

The defendant then offered in evidence the bill of sale of the steamer, from the plaintiffs to Wright, and the plaintiffs then asked the following instruction to the jury:

If the jury believe from the evidence, that the note in suit was endorsed by the defendant, and passed to the plaintiffs by the defendant, or by his authority, in part payment of the purchase money of the steamer Jewess, agreed to be paid by James I. Wright upon the contract offered in evidence, and that in pursuance of this contract the plaintiffs conveyed the steamer to Wright, and that the note has not been paid, and that the plaintiffs are holders thereof, then the plaintiffs are entitled to recover in this case.

The defendant then offered two prayers as follows:

1st. That the notarial certificate of protest, offered in evidence by the plaintiffs, is not sufficient legal evidence that the note was duly presented for payment, if the jury shall find from the evidence, that the makers of the note had not, and that neither of them, at the time the note was made, had their or his domicil or place of business within the State of Maryland.

2nd. That the notarial certificate of protest, offered in evidence by the plaintiffs, is not sufficient legal evidence that due diligence was exercised to make presentment of the note for payment, if the jury shall find from the evidence, that neither of the makers of the note, at the time the same was made, had their or his domicil or place of business within the State of Maryland.

The court refused the plaintiffs' prayer and granted those of the defendant, and to this ruling the plaintiffs excepted.

Ricketts & Whittington *vs.* Pendleton.

*3rd Exception.* The plaintiffs' counsel then produced as a witness, the notary who protested the note, stating, at the time, to the court, that before the meeting of the court on yesterday, and before the argument of the prayers had been commenced, he had issued a *subpœna* for this witness. and was informed by the sheriff that he could not be found, and that on this morning, before the meeting of the court, the counsel urged upon the sheriff to have the witness in court by the hour of its meeting, and that he is now in court for the first time, to the knowledge of the counsel or his clients, and that the plaintiffs expected to prove by this witness, that he had used due diligence and every reasonable effort, as notary, to make presentment and demand payment of the note, but could not find out, after due inquiry, where the makers thereof lived, or where their place of business, if any, was located. The defendant objected to the introduction of further testimony and relied on the 35th and 36th rules of court, which are set out in this exception. These rules are to the effect, that "the court will ordinarily require that the whole of the evidence intended to be produced by plaintiff and defendant shall be offered before any prayer is made to the court for instructions thereon," and that "after all the testimony intended to be offered by plaintiff and defendant shall have been introduced, the court will expect to be furnished with all the prayers which the parties respectively may propose to found thereon;" and that the prayers shall be argued together. It was admitted the witness is the notary who made the protest, that he resides in the city of Baltimore, and was in court this morning, before the decision of the prayers was pronounced by the court, and was seated within the bar during the time occupied by the judge in the delivery of his opinion, being about one hour. It was further admitted that a *subpœna* was issued yesterday, before the meeting of the court, by plaintiffs' attorney, for this witness, and that he was, for a short time, yesterday, in court, but the plaintiffs' counsel stated he was not aware of his presence in court at that time, but was aware of his presence in court this morning. It was further admitted that no leave was asked or reserved, on either side, to offer further testimony,

and that the plaintiffs' counsel had not intimated, in any way, either to the court or to the counsel for the defendant, that he desired to examine this witness, until the offer now made to examine him. The court refused to permit the witness to be examined, and to this ruling the plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Geo. E. Mortimer* and *St. Geo. W. Teackle* for the appellants, argued:

1st. That there was error in permitting the question stated in the first exception, to be put to the witness, and in admitting the answer of the witness thereto. The question was wrong in form, being *leading*, and the testimony was irrelevant. Mere *knowledge* is not *assent*, and the defendant's liability could not be affected unless the plaintiffs *assented* to the agreement. The *offer* was not followed up, and the evidence, when looking to the offer alone, was not admissible, because *knowledge* on the part of the plaintiffs of the contract, without *assent* to it as parties, would not be sufficient to relieve the defendant from his liability on the note.

2nd. That there was error in refusing the plaintiffs' prayer, and in granting these of the defendant, as stated in the second exception. The defendant's prayers concede that if the makers resided in the State, the protest would be sufficient, and the Act of 1837, ch. 253, makes the protest *prima facie* evidence of what is therein stated, whether the makers are non-residents or not. But if the maker *lives* (as these prayers concede) or removes out of the jurisdiction of the place where the note is *dated*, and where it is presumed to be payable, the holder is not bound to present it, or make demand anywhere. On this point, see 3 *Md. Rep.*, 251, *Nailor vs. Bowie.* 3 *Kent*, 96. *Story on Prom. Notes, secs.* 205, 231, 236. *Story on Bills, sec.* 353. 3 *Johns*, 202, *Mason vs. Franklin. Ibid.*, 208, *Root vs. Franklin.* 10 *Martin, (La. Rep.,)* 643, *Hepburn vs. Toledando.*

3rd. That there was error in the refusal of the court to permit the witness to be examined, and to testify in regard to the matters which the appellants expected to prove by him, as stated in the third exception. This court can review the construction of the rules of the court below, when set out in the record. *Evan's Pr.*, 297. 2 *H. & G.*, 136, *Morton vs. Beall's Adm'r.* 2 *Gill*, 347, *Gist vs. Drakely.*

*Lloyd W. Williams* and *Wm. Schley*, for the appellee, argued:

1st. That the evidence purposed to be given on the part of the defendant, of the special agreement under which he wrote his name on the back of the note, and of the knowledge of the plaintiffs of this agreement, when they received the note, and of the open violation of this agreement, was proper and admissible, to show that the defendant *did not endorse the note to the plaintiffs;* that it was, in fact, delivered to the plaintiffs to be held upon a *condition* to be performed before the interest of the holder would attach. 2 *New Hamp.*, 171, *Moody vs. Leavitt.* 8 *Mees. & Wels*, 494, *Marston vs. Allen.* 40 *Eng. C. L. Rep.*, 94, *Adams vs. Jones.* 64 *Eng. C. L. Rep.*, 317, *Bell vs. Ingestre.* 1 *Eng. Law & Eq. Rep.*, 229, *Lloyd vs. Howard.* 3 *Eng. Law & Eq. Rep.*, 379, *Smith vs. Braine.* 4 *Eng. Law & Eq. Rep.*, 366, *Southall vs. Rigg.* 5 *Bos. & Pull.*, 170, *Goggerly vs. Cuthbert.*

2nd. The prayer of the plaintiffs was properly rejected, for, besides other strong objections, it withdraws from the jury the consideration of the material facts of presentment and notice. Even where the proof is uncontradicted, all questions of *fact* must be submitted to the jury. 10 *Md. Rep.*, 118, *Boyd vs. McCann.* 9 *Md. Rep.*, 194, *Haney vs. Marshall.*

3rd. The notarial certificate proves only that the notary went *with* the note to the Exchange, Post-Office, &c., and did not find any person who would pay the note. It was a mere formality. It cannot be inferred from the facts stated, that he made any inquiries, there or elsewhere, as to the makers, or that he presented the note *to* any one. The Act of 1837, ch. 253, changed the law *only* to the extent of making the certifi-

cate *prima facie* evidence of presentment *in the manner* therein stated. It has no further efficacy. 1 *Md. Rep.*, 68, *Graham vs. Sangston. Ibid.*, 511, *Hunter vs. Van Bomhorst.* 3 *Md. Rep.*, 202, *Boehme vs. Carr. Ibid.*, 258, *Nailor vs. Bowie.* 10 *Md. Rep.*, 98, *Sasscer vs. Whitely & Stone.* 11 *Md. Rep.*, 486, *Moore vs. Hardcastle.*

4th. It was the clear duty of the notary, the holder, and all interested in the duty of making presentment, to ascertain, if practicable, the residence of the makers, and to make diligent efforts for that purpose, and to present the note for payment to the makers. The contingent liability of the endorser is not to be converted into a fixed liability to pay, unless this be done if possible. Whoever buys a promissory note is bound, if he seeks to charge the endorser, to ascertain the domicil or place of business of the makers. See, in addition to the cases above cited, *Story on Prom. Notes*, secs. 205, 251; 1 *Am. Leading Cases*, 185, 196, 215; 19 *Johns*, 391, *Woodworth vs. Bank of America;* 3 *Denio*, 145, *Taylor vs. Snyder;* 1 *Comstock*, 321, *Spies vs. Gilmore, et al.*, and same case in 1 *Barb.*, 158. Due diligence is a question of law. 7 *Gill*, 231, *Bell vs. Hagerstown Bank.*

5th. The refusal of the court to permit the plaintiffs to adduce new evidence-in-chief at the stage of the cause in which it was proposed to do so, and under the circumstances of the case, was justified by the rules of court referred to, and the rules themselves are essential to the orderly administration of justice, and to the preservation of open and candid practice. It is wisely confided to the discretion of the judge at the trial, who, where the purposes of justice require it, may, consistently with the rules, always permit the introduction of further evidence. Such rules are legal and cannot be disregarded. 2 *Gill*, 330, *Gist vs. Drakeley.* 3 *Md. Ch. Dec.*, 320, *Abercrombie vs. Riddle.*

BARTOL, J., delivered the opinion of this court.

We find no error in the ruling of the Superior court upon the question presented by the first bill of exceptions. The alleged agreement between the defendant and H. S. Ward & Co.,

was not, *per se*, evidence in this cause, but we concur with the court below, in the opinion that it was admissible, taken in connection with the other facts, which the defendant proposed to prove, and which were embraced in the offer, namely: "that the plaintiffs received said note from H. S. Ward & Co., with express notice and actual knowledge of the agreement and understanding on which said note was endorsed by defendant."

For the purposes of this exception, the fact thus offered to be proved must be taken as true, and is evidence from which the jury might infer that the plaintiffs acquiesced in the agreement and accepted the note, subject to its stipulations and conditions.

There can be no doubt that it is competent for a defendant to show by parol that a promissory note, on which he is sued as endorser, was delivered as an *escrow*, or that it was delivered to the plaintiff to be held upon a condition to be performed before the interest of the holder could attach. *Bell vs. Ingestre*, 64 Eng. C. L. Rep., 317.

In the case before us, in order to bind the plaintiffs by the alleged agreement, it was necessary for the defendant to prove to the satisfaction of the jury, that they (the plaintiffs) were parties to it, or had knowledge of it, and accepted the promissory note, to be held by them, subject to its stipulations and conditions. In our opinion, the offer of the defendant was not supported by the proof given under it. This question might have been raised by an application to the court, based on its legal insufficiency. No such application was made, and we are compelled to pass on the exception, as it was taken at the trial and presented in the record.

The second exception brings before us for review, the action of the Superior court upon the prayers, of which the plaintiffs offered one that was rejected, and the defendant two, which were granted.

The plaintiffs' prayer was properly refused. In order to fix the liability of the defendant, notice to him of the non-payment of the note was necessary. That was evidenced by the certificate of the notary, which the Act of 1837, ch. 253, makes

42      v. 14.

*prima facie* evidence, but, like all other evidence, it must be submitted to the jury and passed upon by them. 9 *Md. Rep.*, 194. 10 *Md. Rep.*, 118. *Ibid.*, 234.

The sufficiency in law of the demand and notice, as evidenced by the notarial certificate, to charge the defendant, must be determined by the court. In this case, that depends upon the fact that the makers of the note were non-residents, which ought, also, to have been submitted to the jury by the plaintiffs' prayer.

In granting the defendant's prayers, the court instructed the jury that the notarial certificate "was not sufficient evidence that the note was duly presented for payment." This instruction, we think, was erroneous. The note was drawn by Ward & Co., who were, at the time of making it, and continued to be, non-residents of the State of Maryland. It was dated "Baltimore," and the presumption is, in the absence of proof to the contrary, that it was payable there. 10 *Md. Rep.*, 103. When the makers of a note do not reside in the State, and have no place of business within the State, no demand upon them is necessary. *Story on Prom. Notes, sec.* 236. 3 *Kent's Com.*, 96.

The prayers of the defendant, in this case, assume the fact that the makers of the note "had not, nor had either of them, his or their domicil, or place of business, within the State of Maryland." That fact excused the holder from making demand upon them in Baltimore, where the note was payable, for the attempt to do so would have been futile. There was, therefore, in our opinion, error in granting the defendant's prayers.

The action of the Superior court, set out in the third exception, was in conformity with its 35th and 36th rules of practice. Such rules are necessary for the orderly transaction of the business of the court, and we think they were properly enforced in this case.

*Judgment reversed and procedendo ordered.*

(Decided July 15th, 1859.)