MILTON DANCE, Executor of JOSEPH G. DANCE *vs.*
ALEXANDER DANCE and RACHEL DANCE, his Wife,
and SARAH C. BROOKS.

*Lien on Real Estate for the Purchase money—When such
Lien is discharged—No ground to restrain Mortgagee from
Selling the mortgaged property—Right of subsequent Incum-
brancer to intervene in the proceedings to sell the Mortgaged
property, and claim balance of Purchase money, after pay-
ment of the Mortgage debt—Parol proof inadmissible to
vary the terms of a Promissory note.*

J. D. on the 10th of January, 1874, conveyed to his son, A. D., certain
real estate for $4000. The son paid $1000 in cash, and for the
balance of the purchase money, gave his two promissory notes,
one for $400, payable "twelve months after date, with six per cent.
interest," and the other for $2600, payable "one year after the death
of his mother, with six per cent. interest." The father died shortly
after the execution of the deed, leaving a will by which he
appointed his son, M. D., his executor. On the 18th of March,
1879, A. D. and wife mortgaged the property to S. B., to secure a
debt of $2000, and on the 21st of the same month, the executor,
M. D., filed a bill in which he averred that part of the principal of
the note for $400, and interest on the $2600 note, making in the
aggregate $820.72, was then due, and he insisted that this purchase
money was a lien upon the land. The bill further charged that
the mortgage to S. B. was a device to defraud the complainant and
the devisees of J. D. out of this unpaid purchase money. The bill
prayed that a decree might be passed for a sale of the land for
payment of the purchase money, that A. D. might be enjoined from
selling or encumbering it, and that S. B. might be enjoined from
disposing of her mortgage, and from selling the property there-
under. A. D. and S. B. answered the bill, and proof was taken.
There was no evidence tending to impeach the validity of the
mortgage or to sustain the charge of fraud ; and there was nothing
to affect S. B., the mortgagee, with knowledge or notice, at the
time the mortgage was executed, that any part of the purchase

money for the land remained unpaid, or that there was any claim therefor by the executor of the vendor. The proof showed that the note for $400 had been paid in full, before the bill was filed, and that some payments had been made on the other note. Neither the principal nor the interest of this note, was due or payable until one year after the death of the mother, who was still living. HELD:

1st. That as between the vendor or his executor, and the vendee, there was a lien upon the land for the unpaid purchase money.

2nd. That the mortgagee with respect to her mortgage, was a subsequent *bona fide* purchaser from the vendee, for value and without notice, and could take the estate discharged of the lien.

3rd. That the mortgagee could not be restrained from selling the property under her mortgage, or from dealing with that mortgage as she might see fit.

4th. That should the mortgagee institute proceedings to sell the property under her mortgage, it would be competent for the executor, as a subsequent incumbrancer, to intervene in that case, and claim so much of the proceeds of sale as should remain after satisfying the mortgage debt.

Where a note is made payable one year after the death of the maker's mother, with six per cent. interest, nothing being therein specified as to the time when such interest should be paid, parol proof is inadmissible to show that at the time the note was executed, it was the understanding and agreement between the payee and the maker, that the latter should pay the interest *annually.*

APPEAL from the Circuit Court for Baltimore County, sitting in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and MAGRUDER, J.

*R. R. Boarman,* for the appellant.

*John T. Ensor,* for the appellees.

MILLER, J., delivered the opinion of the Court.

It appears from this record, that Joseph G. Dance, on the 10th of January, 1874, conveyed to his son, Alexander Dance, certain real estate for $4000. The son paid $1000 in cash, and for the balance of the purchase money, gave his two promissory notes, one for $400 payable "twelve months after date, with six per cent. interest," and the other for $2600, payable "one year after" his mother's death, "with six per cent. interest." The father died shortly after this deed was executed, leaving a will, by which he appointed his son Milton Dance, his executor. On the 18th of March, 1879, Alexander Dance and wife mortgaged the property to Mrs. Sarah C. Brooks, to secure a debt of $2000, and on the 21st of the same month, the executor filed the bill in this case, in which he avers that part of the principal of the $400 note, and the interest on the $2600 note, making in the aggregate the sum of $820.72, is now due, and he insists that this purchase money is a lien upon the land. The bill further charges that the mortgage to Mrs. Brooks, was a scheme and device mutually agreed upon between the parties thereto, to defraud and cheat the complainant, and the devisees of Joseph G. Dance, out of this unpaid purchase money, and that she took the mortgage with full knowledge of this lien. The prayer of the bill is that a decree may be passed for a sale of the land for payment of the purchase money, that Alexander Dance may be enjoined from selling or encumbering it, and that Mrs. Brooks may be enjoined from disposing of her mortgage, and from selling the property thereunder by any proceeding in equity or otherwise.

Alexander Dance in his answer, avers that he has paid the $400 note in full, principal and interest, and that no part of the principal or interest of the $2600 is now due, as the same is made payable one year after the death of his mother, who is still living. He denies there is any

lien upon the land, and insists that the payment of the purchase money, when it shall mature, is provided for out of money coming to him from his father's estate, as will appear by the provisions of his father's will. He denies the charge of fraud and conspiracy in reference to the mortgage, and avers the same was executed in good faith, for money actually borrowed from and due to Mrs. Brooks, and that he is satisfied she was not then aware that he was indebted on any account to any other person. Mrs. Brooks, in her answer, also denies the allegations of fraud and conspiracy, avers the *bona fides* of the mortgage and the debt due to her, and insists that when she took it she had no knowledge whatever that the complainant had any claim for purchase money against the mortgaged property.

Upon the hearing, after testimony had been taken, the Court passed a decree dissolving the injunction that had been previously granted, and dismissing the bill. From that decree the complainant has appealed.

As between the vendor or his executor and the vendee, we have no doubt there was a lien upon this land for the unpaid purchase money. Equity recognizes and enforces a lien on the land as security for the unpaid purchase money, whether the legal estate has been conveyed or not; and this lien exists independent of any special agreement, as an incident to the contract of sale of real estate. It is not extinguished, even where the legal title has been conveyed, by the mere fact that the vendee gives his own individual note or obligation, *without other security*, for payment of the purchase money. *Schwarz vs. Stein*, 29 *Md.*, 112; *Hurley vs. Hollyday*, 35 *Md.*, 472. Here, the purchaser simply gave his own notes without any other security. Beyond taking these notes, we find nothing in the case indicating an intention on the part of the vendor to waive the lien. We find nothing in the provisions of the will to justify the presumption of such waiver.

But where the vendor has parted with the legal title, a subsequent *bona fide* purchaser from the vendee, for value and without notice, will take the estate discharged of the lien.   *Roberts vs. Salisbury,* 3 *G. & J.,* 425 ; *Ringgold vs. Bryan,* 3 *Md. Ch. Dec.,* 488 ; *McGonigal vs. Plummer,* 30 *Md.,* 428.   It is clear, we think, that Mrs. Brooks, with respect to her mortgage, is such subsequent purchaser. There is no proof in the case tending to impeach the validity of this mortgage, nor to sustain the charges of fraud and conspiracy.   Nor do we find anything in the record to affect her with knowledge or notice, at the time the mortgage was executed, that any part of the purchase money for this land remained unpaid, or that there was any claim therefor by the executor of the vendor.   It is plain, therefore, that there is no ground for restraining her from selling the property under her mortgage, or from dealing with that mortgage as she may see fit.

But the executor insists he has the right to a decree for a sale of the property, *subject to this mortgage,* for the purpose of satisfying, to that extent, the vendor's lien.   But this depends upon the question, whether any part of the unpaid purchase money is *now due.*   The proof satisfies us that the $400 note had been paid in full, principal and interest, before this bill was filed, and that the purchaser has also made some payments for which he is entitled to a credit on the $2600 note.   By the terms of this latter note, neither the principal nor the interest upon it, is due or payable until one year after the death of his mother, who is still living.   It is true, that some proof, (not however of a very satisfactory character,) was introduced, tending to show that when this note was executed, it was the understanding and agreement between the payee and the maker, that the latter should pay the interest on it " *annually,*" but exception has been taken to the admissibility of this testimony, and we think it clear, it must be rejected.   The effect of admitting it, would be

to introduce a new term into the note, making a different contract from that which is expressed on its face.   Without going at large into the authorities, this, in our opinion, is plainly a case, which comes under the elementary rule, excluding parol proof from being used for the purpose of contradicting, adding to, or varying the terms of a written contract.   The general doctrine is, that all oral negotiations, or stipulations between the parties, preceding or accompanying the execution of a written instrument, are to be regarded as merged in it, and the latter treated as the exclusive medium of ascertaining the agreement by which the contracting parties have bound themselves.   *Bladen. vs. Wells*, 30 *Md.*, 581.

It follows that as no part of the purchase money is now due, the bill is premature.   Nor can we discover any good reason for retaining it.   If Mrs. Brooks proceeds to institute proceedings to sell the property under her mortgage, it will be competent for the executor, as a subsequent incumbrancer, to intervene in that case, and claim so much of the proceeds of sale as shall remain after satisfying the mortgage debt, and this, so far as we can perceive, is the only proceeding he can adopt before the maturity of the $2600 note.

*Decree affirmed.*

(Decided 29th June, 1881.)