FOREMAN, ET UX. *v.* MELROD, to the use of
KRICK OF MARYLAND, INC.

[No. 296, September Term, 1969.]

*Decided April 1, 1970.*

436

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Thomas P. Smith,* with whom were *Karl G. Feissner* and *Feissner, Kaplan & Smith* on the brief, for appellants.

*Warren K. Kaplan,* with whom were *Melrod, Redman & Gartlan* and *Gorman E. Getty* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal presents to us for decision the question of whether or not the Circuit Court for Allegany County (Naughton, J.) properly held that the parol evidence rule would make inadmissible in evidence the defense of the appellants, Earl M. Foreman and Phyllis R. Foreman, his wife, to the collection of a promissory note for $90,000, that there was a contemporaneous oral agreement that the note was to be collected only in the event that Leonard S. Melrod and Krick of Maryland, Inc. (Krick) had exhausted their legal remedies against the payees of the note and others. Judge Naughton, in view of his holding, found that there were no relevant facts in dispute, that the appellees, as plaintiffs below, were entitled to a summary judgment as a matter of law and granted such a summary judgment against the Foremans.

The facts, appearing in the depositions, pleadings and affidavits, are as follows: Krick is a general plumbing and contracting corporation that performed certain labor and services for Arnold A. Heft, a contractor, on an apartment complex in Montgomery County known as Versailles Plaza East. Mr. Foreman, a member of both the bars of Maryland and the District of Columbia, represented Heft in 1966. On November 30, 1966, the balance due Krick by Heft was $90,417.72. On that date, in order to induce Krick to release its lien on the newly erected building, Heft and his wife Sylvia executed a promissory note to the order of Krick in the amount of the balance of the indebtedness. This Heft note was payable as follows: $22,684.48 on January 30, 1967, and $22,684.48 on the last of each month thereafter until the entire amount was paid, with interest at the rate of 6% per annum payable when the principal amounts were paid. It was also provided that if any installment of interest or of principal was not paid when due, all installments at the holder's option, should become due and payable. There was also a provision that if an attorney were used to collect the note or any security or guaranty given for it, an attor-

ney's fee of 15% of the principal and interest should be added to the amount of the note. Jules S. and Marlyn S. Minker signed an endorsement and guarantee of payment of this note.

As collateral security for the payment of the Heft note, Krick was given a third deed of trust for the amount of that note on the Versailles Plaza East property and Mr. and Mrs. Heft assigned to Krick the promissory note of the appellants, Earl M. and Phyllis R. Foreman for $90,000 payable to the Hefts. The Foreman note, dated November 30, 1966, was for $90,000, with interest from date at 6% per annum, "the said principal and interest being all due and payable one (1) year from the date hereof." There was a provision for a 10% attorney's fee if the services of an attorney were needed for collection of the note. There was also a provision waiving presentment, demand, protest and notice of dishonor. The Hefts placed an endorsement on the back of the Foreman note as follows:

> "Pay to the order of Leonard S. Melrod, Esq., to be held in accordance with the terms and conditions of a Collateral Security Agreement dated November 30, 1966, and entered into by and between Arnold A. Heft, Sylvia E. Heft, et al., Krick of Maryland, Inc., a Maryland Corporation, and Leonard S. Melrod."

The Collateral Security Agreement referred to in the endorsement on the back of the Foreman note, was executed by Versailles Plaza East Limited Partnership by Arnold A. Heft, Jules S. Minker, S. Robert Baldinger and Carl Oppenheim, as general partners, as well as the other parties already mentioned. It recited the execution of the Heft note; that this note was received by Krick on the understanding that additional security as recited in the Collateral Security Agreement would be provided; that the Versailles Plaza East Limited Partnership had agreed to give a third deed of trust on the Versailles Plaza East property as collateral security and that the "Hefts

have further agreed to collaterally secure the [Heft] Note by pledging all of their right, title and interest in and to" the Foreman note for $90,000 dated November 30, 1966, with 6% interest "principal and interest all due and payable on November 30, 1967."

The Collateral Security Agreement then set out in detail the delivery of the collateral security, including the Foreman Note, and provided in regard to the Foreman Note, the following:

> "To the extent that the [Heft] Note delivered to Krick shall not be paid when and if the same shall fall due in accordance with its terms *and notwithstanding any other remedies or security available to Krick,* Melrod may, as of November 30, 1967, direct Earl M. Foreman and Phyllis R. Foreman that payment of their obligation to the Hefts, to the extent that the [Heft]. Note delivered to Krick shall not have been paid, in full, as of November 30, 1967, shall be made to him to apply against the then outstanding balance of said [Heft] Note delivered to Krick * * *."
> (Emphasis supplied.)

As we have indicated, at the time of the execution of these documents on November 30, 1966, Mr. Foreman was attorney for Mr. Heft. All of the papers were prepared by Mr. Foreman (or another attorney in his law office) and Mr. Foreman—although he did not execute the Collateral Security Agreement—was aware of its terms.

Prior to November 30, 1966, Mr. Foreman and Mr. Heft were joint owners of a tract of undeveloped land adjacent to Versailles Plaza East, known as Versailles Plaza West. As a part of the transaction, at Mr. Foreman's suggestion, Mr. Heft agreed to, and did sell to Foreman, Heft's 50% interest in Versailles Plaza West for $90,000. A contract of sale was prepared and the Heft interest in the Versailles Plaza West property was deeded to Foreman, the Foreman note being the method of paying for the transfer.

In accordance with the Collateral Security Agreement, the Foreman note was immediately assigned to Mr. Melrod, as attorney for Krick to be held in accordance with the provisions of that agreement. Neither the Heft note nor the Foreman note was paid when due and no payments were made on either note prior to the institution of the action at law in the present case on October 15, 1968. The plaintiff in that action—Melrod, to the use of Krick —filed a motion for summary judgment with the declaration together with the Foreman note and an affidavit in support of the motion, verifying the execution of the note by the Foremans, demand for payment and failure by the makers to pay. In the affidavit of Mr. Foreman in opposition to the granting of the summary judgment is stated, in relevant part, as follows: ". . . it was the agreement and understanding of Affiant [Mr. Foreman], the Hefts, Krick . . . and Leonard S. Melrod that the note signed by Affiant and his wife was to be collected by Krick . . . or anyone else, only in the event that Krick was unable to collect its funds directly from" the Hefts, the Versailles Plaza East Limited Partnership or the guarantors, or any of them, and further that the Foreman note was "not to be used until after Krick . . . had exhausted its legal remedies against the Hefts and the guarantors as well as after Krick . . . had caused the Trustees of the Deed of Trust aforesaid to foreclose said Deed of Trust . . ." and that it was only to the extent that Krick was unable to secure such funds after having exhausted such legal remedies and Krick was still unsatisfied, "then, and at that time only, would Krick . . . have a right to collect the note signed by Affiant and his wife which forms the subject matter of this complaint." It is also stated in Mr. Foreman's affidavit—and not disputed by the plaintiff and appellee—that Krick had instituted suit against the Hefts, the limited partnership and the guarantors but had not obtained judgment, and had not instituted foreclosure proceedings under the deed of trust.

As we have indicated, the trial court was of the opinion that under the proper application of the parol evidence

rule the alleged contemporaneous oral agreement set out in Mr. Foreman's affidavit would not be admissible into evidence, so that there was no dispute in regard to any relevant fact and the plaintiff Melrod to the use of Krick was entitled to judgment as a matter of law. In accordance with the lower court's written opinion to that effect, judgment was entered on September 8, 1969, in favor of the plaintiff against the Foremans in the amount of $115,335.00. This sum consisted of the principal amount of the Foreman note of $90,000.00, interest of $14,850.00 and an attorney's fee of $10,485.00, representing 10% of the total of principal and interest. The Foremans took a timely appeal from that judgment to this Court.

In our opinion, the lower court ruled properly and we shall affirm the judgment of September 8, 1969.

It is well settled that for a defendant to avoid the entry of summary judgment against him in a case otherwise properly indicating that summary judgment should be entered, it is necessary for him to set forth in his affidavit in opposition to the motion for summary judgment facts, which *are admissible as evidence,* indicating that there is a genuine dispute between the parties in regard to a material fact. *Fishman Construction Co., Inc. v. Hansen,* 238 Md. 418, 209 A. 2d 605 (1965) and prior Maryland cases therein cited. The only issue in the present case, therefore, is in regard to the correctness of the lower court's ruling that the proffered evidence of the alleged oral agreement was inadmissible.

The essence of the parol evidence rule is that in the absence of fraud, duress, or mistake (none of which exist in the present case) parol evidence of conversations or alleged oral agreements made before or at the time of the integration of the contract into the writing must be excluded from evidence, inasmuch as a "different rule would increase the temptations to commit perjury and often render instruments of little value. All prior and contemporaneous negotiations are merged in the written instrument, which is treated as the exclusive medium for ascertaining the extent of their obligations." *Markoff v.*

*Kreiner,* 180 Md. 150, 154-155, 23 A. 2d 19, 23 (1941). The parol evidence rule is not a rule of evidence but is a rule of substantive law. *Rinaudo v. Bloom,* 209 Md. 1, 120 A. 2d 184 (1956).

It is well settled that the parol evidence rule does not prevent the introduction of parol evidence indicating that the written instrument was not to become *effective as an instrument,* until a prior condition or event had occurred. *Jenkins v. First National Bank,* 134 Md. 85, 106 A. 174 (1919) ; *Ricketts v. Pendleton,* 14 Md. 320 (1859). See also the landmark English case on this subject, *Pym v. Campbell,* 6 El. & Bl. 370 (1856). Parol evidence, however, is not admissible to vary the *time of payment* expressed in a promissory note or to contradict other provisions in the note, even if the note is in the hands of the original payee or a person not a holder in due course. *Crothers v. National Bank of Chesapeake City,* 158 Md. 587, 149 A. 270 (1930) ; *Dance v. Dance,* 56 Md. 433 (1881) ; *McSherry v. Brooks,* 46 Md. 103 (1877) ; *Miller v. Hockley,* 80 F. 2d 980 (C.A. 4, 1936) ; *Baucom v. Friend,* 52 A. 2d 123 (D.C., 1947). See 4 *Williston on Contracts* (1961 Ed.), § 644 and 9 Wigmore on Evidence (1940 Ed.), §§ 2443 and 2444.

In *Crothers, supra,* the plaintiff Bank (appellee in the *Crothers* case) sued the maker on a promissory note. The maker (Crothers) defended by claiming that there was an oral agreement made contemporaneously with the execution by him of the note, that the bank would look to the payee of the note for payment and not to the maker, the defendant Crothers. In holding that the alleged contemporaneous oral agreement violated the parol evidence rule, Judge Parke, for the Court, stated:

> "At the hearing on the motion the obligor and defendant offered testimony tending to show such a parol agreement, but *this defense could not be proved when lying in parol.* The writing obligatory [note] was executed and delivered by the defendant, and *the proposed defense runs*

*counter to the terms of the written contract,* and is a complete nullification of the explicit covenants of the obligor. The parties to the contract, after a preliminary oral negotiation, reduced their agreement to writing for the purpose of embodying their contract in its final form. *On its face the contract was complete, and the intention of the parties that the obligor was bound to pay the sum named when and as stipulated is unequivocally expressed in the writing. . . .* [T]he writing, with respect to the transferee or assignee of the document, was a complete integration of the agreement of the obligor and obligee and guarantor, with respect to those matters with which the paper expressly dealt, that precludes the introduction of any prior or contemporaneous oral agreement to vary the terms of the writing obligatory [note] as against its transferee. *The sound doctrine is that parol testimony is not admissible to change the clear and precise terms of an executed, delivered, and operative written contract which was designed to be repository and evidence of the final intention of the parties.*" (Citing Cases) (Emphasis supplied.) (158 Md. at 594-6, 149 A. at 274).

See also *Plitt v. McMillan,* 235 Md. 349, 201 A. 2d 787 (1964) ; *Power v. Allied Asphalt Products Corp.,* 162 Md. 175, 159 A. 251 (1932).

A careful reading of the alleged contemporaneous agreement demonstrates that the Foreman note became *effective* when delivered, but that it was not to be *paid* until after the exhaustion of other legal remedies, thus being, in effect, a provision for the *possible postponement of the time of payment* beyond the one year provision set forth in the note. It is thus seen that the alleged oral agreement was not a "condition precedent" to the note's becoming effective as a note, but was an alleged oral

agreement to vary the provision of the note in regard to the time for payment. Under the authorities already mentioned, such an alleged contemporaneous oral agreement violates the parol evidence rule, is not admissible into evidence and is no defense to liability on the note in accordance with its terms.

In our opinion, the cases relied on by the Foremans are clearly distinguishable from the present case. In *Jenkins v. First National Bank, supra,* which we have already mentioned, the note was delivered upon an oral agreement that it was not to become an effective and binding instrument until it was signed by another person. The other person not having signed, the note did not become a legally effective instrument at all. As we have already indicated, Mr. Foreman, in the instant case, does not state in his affidavit that he and his wife did not become legally bound when they signed the note, but he urges that it was agreed that there should be no proceedings to collect the note until other legal remedies were first exhausted—contrary to the provision for payment in the note. The same distinction may be made in regard to *Ricketts v. Pendleton, supra,* and *Wetzel v. DeGroot,* 86 A. 2d 737 (D.C., 1952).

In the case of *Leonard v. Union Trust Co.,* 140 Md. 192, 117 A. 318 (1922), relied on by the Foremans, the parol evidence was that the consideration for the endorsement of the note in question by the defendant in that case was the bank's promise to apply certain contract payments to the payment of the note, which the bank subsequently failed to do. This parol evidence was held to be admissible to show a *failure of consideration.* In the present case, there is no question of a lack or failure of consideration for the Foreman note inasmuch as it is admitted by Mr. Foreman in his deposition that he received and continues to hold the ownership of the Heft one-half interest in Versailles Plaza West, conveyed as the consideration for the execution and delivery of the Foreman note.

In the case of *Alban Tractor Co., Inc. v. Harrison,* 228

Md. 632, 180 A. 2d 862 (1962), the *plaintiff's* agent testified, without objection, that he had induced the defendant to endorse the note of her son by promising her that the *only* obligation she was undertaking by the endorsement was that if her son defaulted in his payments she would be obligated to see to it that the tractor was returned to the company. This Court sustained the admission of the testimony by the endorser confirming this oral agreement, stating:

> ". . . the appellant's . . . witness first gave testimony which substantiated the appellee's defense that she, in endorsing the note, did so under a contemporaneous parol agreement between the parties that she would assume no monetary liability. . . ." *Ibid.* 228 Md. at 635-6, 180 A. 2d at 864.

Not only was this evidence showing the terms of the oral agreement already in evidence without objection through the witness for the plaintiff, but the oral agreement in that case indicated that there was to be no liability *at all* upon the endorsement and that it was this oral agreement which induced the defendant to endorse the note.

In the present case, the alleged oral agreement not only contradicts the provision of the Foreman note in regard to payment of the note one year from date, but it also contradicts the provisions of the Collateral Security Agreement, prepared and typed in Mr. Foreman's office as a part of the same transaction. The Collateral Security Agreement, by virtue of the provisions of the Uniform Commercial Code, Art. 95B, § 3-119 of the Maryland Code, may be considered by us. Section 3-119 provides in relevant part:

> "(1)  As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction. . . ."

446

As we have already observed, the Collateral Security Agreement expressly provides that Melrod may demand payment of the Foreman note as of the maturity date on November 30, 1967, if there has been a default on the Heft note "notwithstanding the existence of any other remedies or security available." It is apparent that the alleged contemporaneous oral agreement directly contradicts this provision of the Collateral Security Agreement.

As we have indicated, in our opinion, the lower court properly held that because of the proper application of the parol evidence rule the alleged oral contemporaneous agreement relied on by the Foremans as a defense would not be admissible in evidence, so that there was legally no conflict in regard to a material fact and the appellee was entitled to judgment as a matter of law.

*Judgment affirmed, the appellants to pay the costs.*