SALIBA *v.* ARTHUR FULMER CHARLOTTE, INC.

[No. 108, September Term, 1970.]

*Decided November 13, 1970.*

The cause was submitted on briefs to HAMMOND, C. J., and McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

Submitted by *Charles A. Norris* and *A. Victor Cherbonnier* for appellant.

Submitted by *William O. E. Sterling* for appellee.

SMITH, J., delivered the opinion of the Court.

This case involves the question of whether an oral condition precedent may be shown to bar collection on a note executed as a part of a contract to purchase seat covers. The trial judge relied upon the parol evidence rule and entered judgment for the plaintiff against the defendants. We shall reverse that judgment and remand for a new trial.

Appellee Arthur Fulmer Charlotte, Inc., (Fulmer) is a manufacturer of automobile seat covers. Appellant Elie Saliba (Saliba) in the spring of 1966 was an automobile dealer in St. Mary's County. Saliba had been "the owner", as he put it, and president of Lee Motors, Inc., at Lexington Park. The charter of that corporation was revoked by proclamation of the Governor on October 31, 1962, for failure to file reports and to pay the necessary taxes in connection with those reports to the Department of Assessments and Taxation. Saliba continued to trade under the name of Lee Motors, Inc.

In April of 1966 various documents were executed. An order dated April 4 was signed by Saliba for the purchase of 262 seat covers. It reads, "Ship to (Lee Motors, Inc.) McGuires Auto Uphols. & Seat Covers", with an address at Lexington Park identical with that of Lee Motors. It shows that the items were to be charged to "Lee Motors, Inc." No delivery date was specified. Under date of April 5, 1966, a "Distributor 1966 Seat Cover Price Agreement" was executed with the name "McGuire's Auto Upholstery and Seat Covers", at the top of the instrument. The same address was used. At the bottom there was a notation that this was an agreement submitted with an order for 262 seat covers. After the word "buyer" appeared "Lee Motors, Inc., by Elie Saliba". On April 5 Saliba executed yet another document which recited in part:

> "I hereby guarantee to you payment of all sums which shall hereafter become due to you for in-

voices for merchandise sold to McGuire Auto Upholstery and Seat Covers."

On the same date a deferred payment plan note to Fulmer in the amount of $4,336.00 was signed "Lee Motors, Inc. by Elie Saliba". The first payment on the note was due June 20, 1966, in the amount of $435.00.

Fulmer sued "Lee Motors, Inc." and Saliba on the common counts, on a count reciting certain sales in April, May and June of 1966 and on a count referring to the promissory note. Judgment was entered against both defendants in the amount of $5,605.83 together with attorney's fees in the amount of $796.15.

Saliba testified that he conducted the negotiations with a salesman of Fulmer. The salesman did not testify. Saliba said "McGuire" was "the name of the upholstery man who does upholstery" whom the salesman "was suppose[d] to bring to [Saliba] and [who was] suppose[d] to open up the shop." When asked as to the conditions under which he signed the purchase agreement, Saliba said:

> "I signed this document under the condition that he is going to supply 1 or 2 upholsterers, trimmers, whatever you call them, to open up the shop which we need for a shop like that in the Park. Normally, an automobile agency, Your Honor, don't buy $4,000 for the seat covers. We buy $20.00 or $40.00 for our own use."

There was yet additional testimony of Saliba from which it might be inferred that Saliba at first refused to sign an order; that Fulmer's salesman said he could get "not one man but two men"; that the salesman didn't want to get the men until there was "something concrete" to show that an upholstery shop would be opened; that Saliba then signed, saying he didn't want anything shipped "before [he had] the people to run [the] upholstery shop, because [he was] not an upholsterer and [he didn't] have an upholsterer [there]"; that the salesman said he knew

a good man named "McGuire" who was looking for a job; that the salesman suggested using the name "McGuire" because they wouldn't want any merchandise until Mc-Guire came in; and that neither Saliba nor anyone on his behalf ever directed shipment of the seat covers, but rather, "as a matter of fact", Fulmer was called twice and "told not to ship" because Saliba had no upholsterers.

The trial judge noted that Saliba was resting his defense upon a "condition precedent, in that the order was not to become effective until the plaintiff was notified that a certain employee characterized as a 'trimmer' had been obtained by the defendants, which employee allegedly was to be procured by the assistance of the plaintiff." He concluded that had the condition precedent been inserted in the agreements the contention of Saliba would be proper, but declined under the parol evidence rule to consider the condition precedent, quoting our predecessors in *Markoff v. Kreiner*, 180 Md. 150, 23 A. 2d 19 (1941), as follows:

> "One of the most familiar rules of the common law is that parol evidence is inadmissible to vary or contradict the terms of a written instrument. *Warren Glass Works Co. v. Keystone Coal Co.*, 65 Md. 547, 5 A. 253; *Castleman v. Du Val*, 89 Md. 657, 43 A. 821; *Fowler v. Pendleton*, 121 Md. 297, 88 A. 124. The reason for this rule is that when contracting parties have discussed and agreed upon their obligations to each other and reduced them to writing, their written contract is more reliable as evidence than the uncertain memory of man. A different rule would increase the temptations to commit perjury and often render instruments of little value. *All prior and contemporaneous negotiations are merged in the written instrument, which is treated as the exclusive medium for ascertaining the extent of their obligations.* Hence, in the absence of fraud, duress, or mistake, parol evi-

dence of conversations before or at the time the contract was made must be excluded." *Id.* at 154-55. (Emphasis added by the trial judge.)

In the next paragraph of *Markoff* the Court said:

"It was argued that, under an exception to the parol evidence rule, the challenged testimony was admissible as a separate collateral agreement on which the written contract was silent. The doctrine of collateral agreement was explained by Chief Justice Fuller in the following words: 'Undoubtedly, the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if, under the circumstances of the particular case, it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing.' *Seitz v. Brewers' Refrigerating Machine Co.*, 141 U. S. 510, 12 S. Ct. 46, 47, 35 L. Ed. 837, 840." *Id.* at 155.

The trial judge made no finding as to whether there was a merger of the negotiations into the written instrument. As previously indicated, the only person who testified relative to those negotiations was Saliba.

As recently as this current year in *Foreman v. Melrod,* 257 Md. 435, 263 A. 2d 559 (1970), Judge Barnes said for the Court:

> "It is well settled that the parol evidence rule does not prevent the introduction of parol evidence indicating that the written instrument was not to become *effective as an instrument,* until a prior condition or event had occurred. *Jenkins v. First National Bank,* 134 Md. 85, 106 A. 174 (1919); *Ricketts v. Pendleton,* 14 Md. 320 (1859). See also the landmark English case on this subject, *Pym v. Campbell,* 6 El. & Bl. 370 (1856). Parol evidence, however, is not admissible to vary the *time of payment* expressed in a promissory note or to contradict other provisions in the note, even if the note is in the hands of the original payee or a person not a holder in due course. *Crothers v. National Bank of Chesapeake City,* 158 Md. 587, 149 A. 270 (1930); *Dance v. Dance,* 56 Md. 433 (1881); *McSherry v. Brooks,* 46 Md. 103 (1877); *Miller v. Hockley,* 80 F. 2d 980 (C.A. 4, 1936); *Baucom v. Friend,* 52 A. 2d 123 (D.C., 1947). See 4 *Williston on Contracts* (1961 Ed.), § 644 and 9 *Wigmore on Evidence* (1940 Ed.), §§ 2443 and 2444." *Id.* at 442 (Emphasis in original.)

In Restatement, *Contracts* § 241 (1932), it is stated:

> "Where parties to a writing which purports to be an integration of a contract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

The following illustration is given:

> "A and B make and sign a writing in which

A promises to sell and B promises to buy goods of a certain description at a stated price. The parties at the same time orally agree that the writing shall not take effect unless within ten days their local railroad has cars available for shipping the goods. The oral agreement is operative according to its terms. If, however, the writing provides 'delivery shall be made within thirty days' from the date of the writing, the oral agreement is inoperative."

See also *Lutz v. Porter*, 206 Md. 595, 112 A. 2d 480 (1955), and cases there cited. In this instance, no provision was made in the purchase order relative to the delivery date.

See also *Brantley on Contracts* (2d Ed. Rev. 1922), p. 304 which states:

"§ 135. *Parol Condition Suspending Written Instrument*. Although a writing which is in form an absolute and complete contract is duly executed, it may, nevertheless, be shown that, according to the agreement of the parties, it was not to become binding or be put in effect until the fulfillment of some condition precedent resting in parol. Such evidence does not contradict or vary the writing, but goes to prove that the contract never came into existence by reason of the failure of the condition."

The problem as we see it in this case is the trial judge rested his decision entirely upon the parol evidence rule. There was no finding of fact as to whether there was an integration into the written contract of the negotiation between the parties nor was there a finding of fact as to whether there was an oral condition precedent. From the authorities it is clear that if the trier of fact were satisfied that the written instrument did not integrate the entire negotiations, a valid defense might have been established and would have been established if he found from

the testimony that there was in fact a condition precedent. We cannot make this determination from where we sit since we did not hear and see the witnesses. Accordingly, a new trial is necessary.

*Judgment reversed and case remanded for a new trial; costs to abide the final result.*