**Wendell MASON, Plaintiff,**

v.

**CALLAS CONTRACTORS, INC., et al., Defendants.**

**Civ. A. No. J-78-1743.**

United States District Court, D. Maryland.

July 7, 1980.

James M. Gabler and S. Woods Bennett, Baltimore, Md., for plaintiff.

R. Roger Dreshsler and J. Paul Mullen, Baltimore, Md., for defendants, Elwin G. Smith Division Cyclops Corp.

Read McCaffrey, Baltimore, Md., for Rust-oleum Corp.

Benjamin R. Goertemiller, Baltimore, Md., for Callas Contractors.

Emanuel H. Horn and Mark I. Cantor, Baltimore, Md., for Southwestern Materials & Supply, Inc.

Jack L. Hardwick, Baltimore, Md., for Burrey/Kindsvatter, Inc.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

This case arises out of an accident in which plaintiff was seriously injured while removing metal siding from a building. It is alleged that Rust-oleum Corporation contracted in 1977 with Bushey-Burrey, Inc. (now Burrey-Kindsvatter, Inc. and hereinafter Burrey) to expand its factory building. Burrey, in turn, subcontracted with Southwestern Materials and Supply, Inc. (hereinafter Southwestern) to perform a number of tasks including removal of metal siding from the building. On June 15, 1977, plaintiff, in the course of his employment for Southwestern, was engaged in removing siding from the building when a piece of siding fell injuring him.

Plaintiff filed suit against Rust-oleum, the owner of the building, as well as Callas Contractors and Cyclops Corporation, both of whom were alleged to have some responsibility for the original installation of the siding which was the cause of the accident in question. Rust-oleum subsequently filed third-party complaints against Burrey and Southwestern alleging that both were obligated by virtue of certain contractual provisions to indemnify Rust-oleum for damages arising out of this suit.

Both Southwestern and Burrey have moved this Court to vacate the orders permitting Rust-oleum to file third-party complaints against them. Southwestern asserts that as plaintiff's employer, it is protected from the third-party claim by virtue of Maryland's Workmen's Compensation Law. Burrey also claims employer status relative to plaintiff pursuant to Md.Ann. Code Art. 101 § 62 and accordingly claims the same protection from suit. Both Burrey and Southwestern further claim that the respective contractual provisions which require them to indemnify Rust-oleum are void and unenforceable under Maryland law.

### Workmen's Compensation

Both Southwestern and Burrey claim that they are not subject to suit because as employers of plaintiff their liability to him is limited by the Workmen's Compensation Act. The argument follows that if plaintiff's exclusive remedy against these third party defendants is Workmen's Compensation, then Rust-oleum cannot recover indirectly what plaintiff could not recover directly. This is an appealing argument on its face. An examination of Maryland au-

thority, however, leads to a contrary conclusion.

Md.Ann. Code Art. 101 § 15 specifically provides that an employer's liability under the Maryland Workmen's Compensation Act to his employee shall be exclusive. The Act, however, preserves the right of the employee to bring suit against any negligent third party to recover damages. Md. Ann. Code Art. 101 § 58.

The Maryland Court of Appeals has held that a third party who was liable to the employee could not proceed against the employer for contribution as a joint tortfeasor. *Baltimore Transit Co. v. State,* 183 Md. 674, 39 A.2d 858 (1944). That case, however, does not address the present issue of whether the third party can recover from the employer by reason of an indemnity clause. The issue in the instant case is whether there is a right to indemnity by contract rather than one implied in law.

■ The Maryland Court of Appeals indicated in *American Radiator and Standard Sanitary Corporation v. Mark Engineering Co.,* 230 Md. 584, 187 A.2d 864 (1962), that the Workmen's Compensation Act would not bar recovery against the third party by virtue of an indemnity agreement. In that case, the third party argued that an implied right of indemnity existed between it and the employer. The Court rejected the argument that there existed an implied right of indemnity between the third party and the employer and went on to state:

> Since 1948, when *Rukert* [*Standard Wholesale Phosphate & Acid Works v. Rukert Terminal Corp.,* 193 Md. 20, 65 A.2d 304 (1948)] was decided, employers in Maryland have been entitled to rely on the assumption that they would not be liable for or on account of an injury to an employee, beyond payment of compensation, *unless they expressly waived immunity by agreeing to assume an obligation for contribution or indemnity.*

230 Md. at 590, 187 A.2d at 867 (emphasis added). The Court of Appeals appears to have been quite clear in *American Radiator* that an employer may waive immunity under the Workmen's Compensation Act by

entering into an indemnity agreement. Indeed, this is precisely the interpretation of *American Radiator* made by Judge Kaufman of this Court in *McCross v. Ratnaker Shipping Co.,* 265 F.Supp. 827 (D.Md.1967). Accordingly, the Workmen's Compensation Act will not bar recovery from either of the third party defendants by Rust-oleum.

The next question which must be answered is whether the specific indemnity clauses involved would be enforced under Maryland law. Because the chronology and indemnity provisions are somewhat different as to both Burrey and Southwestern, each must be separately examined.

### Southwestern

The accident in question took place on June 15, 1977. The subcontract between Burrey and Southwestern was signed on June 28, 1977. It must first be determined what effect the signing of the subcontract after the accident has on Southwestern's liability.

■ The general rule in Maryland is once parties enter into a written contract, into that written contract will merge all prior negotiations and oral agreements, and the written contract will be viewed as the exclusive medium for determining the right and liabilities of the respective parties. *Housing Authority of College Park v. Macro,* 275 Md. 281, 340 A.2d 216 (1975); *Saliba v. Arthur F. Charlotte, Inc.,* 259 Md. 588, 270 A.2d 656 (1970). Therefore, the indemnity clause will be given effect regardless of the fact that the agreement was signed after the accident occurred.

■ The specific contractual clause in question states:

> The subcontractor agrees to indemnify and save harmless the owner and General Contractor against loss or expense by reason of the liability imposed by law upon the Owner or General Contractor for damage because of bodily injuries, including death at any time resulting therefrom; accidentally sustained by any person or persons or on account of damage to property arising out of or on account of

or in consequence of the performance of this contract only when such injuries to persons or damage to the property are due or claimed to be due to any negligence of the subcontractor, his employees, his agents or servants.

Southwestern argues that this clause is rendered void by Md. Cts. & Jud. Proc. Code Ann. § 5–305 (1980). That section declares that any provision in connection with a construction contract which indemnifies the promisee against liability for bodily injury or property damage "caused by or resulting from the sole negligence of the promisee or indemnity, his agents or employees, is against public policy and is void and unenforceable." *Id.* When this statute is compared with Southwestern's indemnity clause, it becomes apparent that the indemnity clause does not come within the statute. The indemnity clause only indemnifies Rust-oleum for any liability arising from the negligence of Southwestern, the promisor. It in no ways seeks to indemnify Rust-oleum for its own negligence which is what Md. Cts. & Jud. Proc. Code Ann. § 5–305 (1980) was intended to prohibit. Therefore, Southwestern's argument is without merit and its Motion to Vacate the Order Permitting the Filing of a Third Party Complaint will be denied.

### Burrey

■ The indemnification clause between Burrey and Rust-oleum provides:

The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage or expense (1) is attributable to bodily injury sickness; disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any

of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.

This clause is different from that between Southwestern and Burrey in that it purports to indemnify Rust-oleum for liability arising from negligence of the contractor regardless of whether it was caused in part by Rust-oleum. The indemnity clause in the subcontract indemnified Rust-oleum and Burrey "only when" the damages are claimed to be due to Southwestern's negligence. That distinction, however, is of no consequence as to the validity of that clause under Md. Cts. & Jud. Proc. Code Ann. § 5–305. That section only prohibits indemnity agreements which purport to indemnify the promisee against liability caused by "the sole negligence of the promisee." *Id.* The clause in question does not do that, but rather, only purports to indemnity Rust-oleum when the claim arises either wholly or partially due to the negligence of the contractor. Therefore, this clause does not come within the prohibition of the statute.

■ Finally, Burrey argues on the basis of *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 403 A.2d 379 (1979), that intent to waive immunity from suit under the Workmen's Compensation Act cannot be presumed from the indemnity agreement but rather, must be express. The *Ryckman* case, however, is inapposite to the particular issue at hand. That case involved the question of whether parental immunity barred recovery by the lessor of a service station from the tenant for damages it had to pay on account of injuries to the tenant's son. There was an indemnity clause between the lessor and the tenant which the Court of Special Appeals held was insufficient to constitute a waiver of the father's parental immunity and hence recovery by the lessor was barred. The Court held that a waiver of parental immunity would not be presumed "from broadly written, stock language indemnity provisions." *Id.* at 9, 403 A.2d at 384. The Court also noted that "[c]ommon sense dictates that the parties at the time of contracting did not contemplate the circumstances pressed upon the court in

this case." *Id.* The same cannot be said in the present case. Unlike the remote possibility of parental immunity becoming an issue, the possibility of injury of an employee on a construction job is clearly a matter which would have been contemplated by the parties especially in light of the reference to bodily injury in both indemnity clauses. The application of the *Ryckman* reasoning to the present case would be inappropriate. Accordingly, Burrey's Motion to Vacate the Order Permitting the Filing of a Third-Party Complaint must be denied.