Federal Deposit Insurance Corporation, Appellant, et al., Plaintiff, v Michael Forte et al., Defendants, and Lamb Associates, Inc., et al., Respondents.

Second Department, June 6, 1983

APPEARANCES OF COUNSEL

*Ira L. Hyams, P. C.*, for appellant.

*Shapiro, Mortman & Schwartz, P. C.* (*Marvin L. Schwartz* and *Ellen M. Coin* of counsel), for respondents.

OPINION OF THE COURT

GIBBONS, J. P.

The primary issues on these appeals concern the applicability of article 9 of the Uniform Commercial Code to the financial transactions in which the parties herein participated and the propriety of scrutinizing a disposition of collateral under the code standard of commercial reasonableness. Resolution of these issues requires, at the outset, that the different liabilities of the principal defendants be isolated and the nature and scope of the relief sought by the plaintiffs be explored.

I

On September 27, 1973 Franklin National Bank (Bank) loaned $55,000 to the principal debtor, Lamb Associates, Inc. The previous day, the individual respondents, Alfred and Miriam Gluckstal, entered into an agreement with the Bank whereby they personally guaranteed, among other things, any and all loans to be made by the Bank to Lamb Associates. On October 17, 1973 the loan to Lamb Associates was increased to $80,000 and was thereafter renewed periodically until November 6, 1974, when the promissory note which is a basis of this lawsuit was executed and delivered. The promissory note indicates a due date of January 3, 1975.

Apparently, there came a time when the Bank refused to roll over the loan without other security in addition to the personal guarantee of the Gluckstals. On August 7, 1974 such security was given in the form of an assignment of Alfred Gluckstal's one-half interest as mortgagee in a $200,000 mortgage note and mortgage on realty located in Westbury, New York. This mortgage and note were held

jointly by Alfred Gluckstal and the plaintiff Rhoda Sugarman as assignees of the original mortgagee, Rammar Associates, Inc. At the time this suit was commenced, the property covered by the mortgage and note was owned, subject to same, by defendant Michael Forte who held title to the property from Walter L. Stackler, the original mortgagor. Pertinent to this suit, the mortgage agreement provides that, in the event that the realty was foreclosed and sold for less than the debt secured by the mortgage, no claim for a deficiency could be asserted against the mortgagor.

The Bank was declared insolvent and the appellant Federal Deposit Insurance Corporation (FDIC) was assigned all right, title and interest in the note of Lamb Associates, the guarantee by the respondents Gluckstal, and the assigned interest of Alfred Gluckstal in the mortgage and note given as collateral by him for the Lamb Associates loan. Lamb Associates defaulted when the promissory note came due on January 3, 1975. Apparently, the mortgage had also been in default for some time when the FDIC commenced this action.

The suit, jointly brought by the FDIC and the mortgagee, Rhoda Sugarman, contains the basic elements of two separate causes of action, although two causes are not separately pleaded. It requests a foreclosure of the mortgage and the sale of the Forte property, and it also contains a claim on behalf of the FDIC alone for a deficiency judgment against the guarantors, the Gluckstals, and the principal debtor, Lamb Associates, in the event that the FDIC's share of proceeds from the sale of the realty was insufficient to repay the amount due on the Lamb Associates loan. The relief demanded is set forth in the prayer, as follows: "that the monies arising from the sale may be brought into court; that plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION may be paid the amount due to it on the obligations of the defendants LAMB ASSOCIATES INC., ALFRED E. GLUCKSTAL AND MIRIAM GLUCKSTAL to plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION as hereinbefore set forth, with interest to the time of such payment and attorneys' fees; that plaintiff RHODA SUGARMAN may be paid the amount due her on the mortgage note and mortgage, with

interest to the time of such payment" and "that the defendants LAMB ASSOCIATES, INC., ALFRED E. GLUCKSTAL and MIRIAM GLUCKSTAL may be adjudged to pay any deficiency due to the plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION which may remain after the sale of the mortgaged premises and the application of the proceeds pursuant to the directions contained in such judgment".

In essence, the FDIC turned, first, to the guarantor's security by way of the in rem foreclosure proceeding in which it was joined with Sugarman. Under the format of pleading and procedures thus adopted by it, if the share of the foreclosure proceeds, obtainable by it from Gluckstal's security assignment, was insufficient to pay Lamb Associates' debt, it then sought to place itself in a position to litigate in personam against the debtor and the guarantors for any deficiency still owing.

Confronted with this complaint, defendants Lamb Associates and both Gluckstals, appearing by the same attorneys, served a notice of appearance and waiver of "service of all papers and of notices of all proceedings in said action except notice of sale, Referee's report of sale and notice of proceedings to obtain surplus moneys".

On June 15, 1979 a judgment of foreclosure and sale was entered in plaintiffs' favor. The judgment includes a direction that the FDIC "recover of the defendants LAMB ASSOCIATES, INC., ALFRED E. GLUCKSTAL and MIRIAM GLUCKSTAL the whole deficiency or so much thereof as the court may determine to be just and equitable of the residue of the debt remaining due and payable to plaintiff and satisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made and the amount thereof is determined and awarded by an order of this court as provided by law". The property was sold at the foreclosure sale to the highest bidder, Taxco Holding Corp., for the sum of $165,000, the deed being delivered on August 12, 1980. According to the FDIC, the total due it on the Lamb Associates' note, as of that date, taking into account accrued interest and attorney fees, was $176,237.57. By order to show cause, dated November 3, 1980, the FDIC moved to ratify the sale and for leave to enter a deficiency judgment against the Gluck-

stals and Lamb Associates for the balance due it. Miriam Gluckstal and Lamb Associates, represented by the same counsel, and Alfred Gluckstal, represented by separate counsel, opposed the FDIC's application on equitable grounds, claiming that no deficiency should be entered since, allegedly, the collateral security was sold for an amount dramatically less than market value, and the commencement of the suit and the sale of the property was unjustifiably delayed. The respondents also challenged the computations of attorney's fees and demanded a hearing.

Special Term held, and adhered to its holding on reargument, that RPAPL 1371 was applicable and ordered a hearing pursuant to its terms on the fair and reasonable value of the mortgaged premises and reasonableness of the attorney's fees (109 Misc 2d 546).

## II

We agree with Special Term that a hearing should be held in this case prior to the granting of a deficiency judgment, but we do not agree that RPAPL 1371 provides the framework for such a hearing. Rather, section 9-504 of the Uniform Commercial Code and the code standard of commercial reasonableness govern.

A significant portion of the litigation in this case has been concerned with the applicability of the provisions of the RPAPL to the transactions herein. The FDIC maintains that Special Term should not have applied RPAPL 1371 to the application for a deficiency judgment. Reliance is placed on our decision in *GIT Inds. v Rose* (81 AD2d 656). Respondents, in turn, argue that the FDIC should not be permitted to obtain a foreclosure pursuant to the RPAPL and then avoid that statute's restrictions on obtaining a deficiency judgment as found in RPAPL 1371.

Besides relying on *GIT Inds. v Rose* (*supra*), the FDIC argues that State law has no application to its right to a deficiency judgment, that a "uniform national rule is required and FDIC may obtain the full deficiency regardless of the respondents' claim that the property was worth more than the price realized at the foreclosure sale", and that Federal law governs in "suits brought by FDIC to recover the assets of the insolvent bank". Citation is made to

*D'Oench, Duhme & Co. v Federal Deposit Ins. Co.* (315 US 447). Apparently, in the alternative, the FDIC argues for the applicability of the Uniform Commercial Code.

■ At the outset it is necessary to determine whether Federal or State law governs in this case. In circumstances akin to those at bar, the United States Supreme Court has recently held that, in order to avoid disrupting commercial relationships, where "the state commercial codes 'furnish convenient solutions in no way inconsistent with adequate protection of the federal interest[s],'" the court should "decline to override intricate state laws of general applicability on which private creditors base their daily commercial transactions" (*United States v Kimbell Foods*, 440 US 715, 729, quoting *United States v Standard Oil Co.*, 332 US 301, 309). "Accordingly, to the extent that federal law is applicable to the instant case, the federal rule of decision is given by the applicable state law" (*Landmark Land Co. v Sprague*, 529 F Supp 971, 975; *United States v Kimbell Foods, supra*). We therefore turn to an analysis of the applicable State law.

The FDIC, as transferee of the promissory note, "takes the Bank's interest in the note" (*Federal Deposit Ins. Corp. v Russo*, 89 AD2d 575, affd 58 NY2d 929; see Uniform Commercial Code, § 3-201, subd [1]). That interest includes the assignment of Alfred Gluckstal's one-half interest as mortgagee in the mortgage and note on the Westbury property. By the very terms of the mortgage agreement, the FDIC is precluded from seeking to recoup any deficiency from the mortgagor. It must resort to an action or proceeding, as it has done, against the signatory and guarantors of the promissory note, Lamb Associates and the Gluckstals.

Respondents' argument in favor of applying RPAPL 1371 fails to distinguish between the different commercial transactions involved in this case and the varying resultant liabilities. Alfred Gluckstal's assignment of his interest in the mortgage and the mortgage note was not an assignment of a mortgage debt with a guarantee of payment by Gluckstal as mortgagee. RPAPL 1371 only applies where a deficiency is sought in regard to a mortgage debt (RPAPL 1371, subd 1). Here, there was an independent

loan, payment of which was guaranteed by the respondents Gluckstal and payment of which was collaterally secured by that portion of the mortgage debt owed to the respondent Alfred Gluckstal. Accordingly, since the deficiency against the respondents is sought only in repayment of this independent loan, the provisions of RPAPL 1371 do not apply (*GIT Inds. v Rose,* 81 AD2d 656, *supra; Honeyman v Hanan,* 275 NY 382).

The collateral assignment of a secured note, including a mortgage note, creates a security interest in the note. We recognize that the cases are divided as to whether the Uniform Commercial Code applies to a pledge of realty paper as collateral (see White and Summers, Uniform Commercial Code [2d ed], § 22-6, n 106, and cases cited therein). We are of the opinion that, according to the plain meaning of subdivision (3) of section 9-102 and Comment 4 to section 9-102 of the Uniform Commercial Code, the proper view is that article 9 of the code should apply "to all facets of transactions using mortgages and notes as collateral except those issues that arise when the mortgagee's creditor is attempting to enforce the mortgagee's rights under the mortgage" (Comment, Security Interests in Notes and Mortgages: Determining the Applicable Law, 79 Col L Rev 1414, 1427; see *Landmark Land Co. v Sprague,* 529 F Supp 971, 976-977, *supra,* and cases cited therein). Since the motion for the deficiency judgment is distinct from the mortgagee's rights under the mortgage and is nothing more than a motion for the remainder due on the promissory note, article 9 applies.

The effect of the judicial sale of the Westbury property was to dispose of the mortgage and mortgage note as collateral securing the promissory note. Section 9-504 of the code pertains to the disposition of collateral. Among other things, it provides that before the secured party may recover a deficiency judgment against the debtor, the secured party must demonstrate that the disposition of the collateral was commercially reasonable (*Bankers Trust Co. v Dowler & Co.,* 47 NY2d 128). "[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable" (Uniform Commercial Code, § 9-504, subd [3]).

■ The FDIC asserts that a judicial sale is deemed conclusively to meet the standard of commercial reasonableness. This conclusive presumption is permitted, however, only when the judicial sale has judicial approval (Uniform Commercial Code, § 9-507). Insofar as pertinent, subdivision (2) of section 9-507 reads as follows: "A disposition which has been *approved* in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall *conclusively be deemed to be commercially reasonable*" (emphasis added). In this case, there has been no judicial approval. The judgment directing the sale merely prescribed the form of sale and not the manner in which it was to be conducted. The FDIC has requested approval, but Special Term has ordered a hearing to elicit further facts regarding the sale. This disposition was proper where none of the details concerning the sale were provided, such as, the manner in which the sale was publicized and the existence of bona fide competitive bidding (White and Summers, Uniform Commercial Code [2d ed], § 26-11), and where further explanations are required with respect to the value of the property and its alleged dilatory sale.

In determining whether the sale of collateral is commercially reasonable, "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner" (Uniform Commercial Code, § 9-507, subd [2]). However, a wide or marked discrepancy between the sale price and the value of the property will trigger close scrutiny even in the face of procedural propriety (*Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.*, 81 AD2d 168).

The property in question is located in the Village of Westbury, several blocks from a Long Island Railroad station and is zoned for multiple dwellings. The respondents claim that there is a marked discrepancy between the foreclosure sale price and the value of the property. The appraisal values submitted by the parties differ by approximately $200,000. The respondents allege that the property was sold for $182,000 less than its last purchase price.

They also claim that the property was sold to the mortgagor or a company controlled by him and that he thus enjoyed a substantial windfall. While an extreme differential between price and value does not require a finding of commercial unreasonableness, such allegation, in this case, warrants a hearing.

Delay is another factor for consideration on the issue of commercial reasonableness (*Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp., supra,* p 183). Here, the judgment directing the sale was dated June 11, 1979, but the sale did not take place until June 30, 1980. Further inquiry is necessary.

The FDIC also seeks to avoid a hearing by relying on waiver clauses found in the extensive guarantee agreement entered into by the Gluckstals. The FDIC argues that these clauses relieve it of all duty to dispose of the collateral in a commercially reasonable manner including the responsibility to avoid delay which would otherwise be a factor for consideration on the issue of commercial reasonableness. We cannot agree.

A secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement (Uniform Commercial Code, § 1-102, subd [3]). While "the parties may by agreement determine the standards by which the performance of such obligations is to be measured" (Uniform Commercial Code, § 1-102, subd [3]), the parties may not agree to relieve the secured party from all responsibility with respect to the collateral (*Federal Deposit Ins. Corp. v Marino Corp.,* 74 AD2d 620; *Executive Bank of Fort Lauderdale v Tighe,* 66 AD2d 70). The waiver clauses herein have this prohibited effect and thus may not be enforced.

Finally, the reasonableness of the attorney's fees must also be considered at the hearing since the promissory note merely provides for a fixed percentage (*Federal Deposit Ins. Corp. v Schwartz,* 78 AD2d 867, affd 55 NY2d 702; *Franklin Nat. Bank v Wall St. Commercial Corp.,* 21 AD2d 878; cf. *Equitable Lbr. Corp. v IPA Land Dev. Corp.,* 38 NY2d 516, 522, 524).

GULOTTA, O'CONNOR and BOYERS, JJ., concur.

Leave to appeal from the order dated August 7, 1981 is granted by Justice GIBBONS (see *Bagdy v Progresso Foods Corp.*, 86 AD2d 589).

Appeal from the order dated August 7, 1981 dismissed, without costs or disbursements. Said order was superseded by the order entered August 10, 1981, upon reargument.

Order entered August 10, 1981, affirmed insofar as appealed from, without costs or disbursements.