ther consideration consistent with this opinion.

MARYLAND NATIONAL BANK

v.

Robert H. TRAENKLE, et al.

Civil No. K–90–2731.

United States District Court,
D. Maryland.

Aug. 5, 1996.

David S. Musgrave and Susan S. Sands, Baltimore, Maryland, for Plaintiff.

David F. Gould, III, Doylestown, Pennsylvania, for Defendants.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff Maryland National Bank ("the Bank") brought the within action against defendants Robert H. Traenkle and Christine D. Traenkle ("the Traenkles") to collect a debt allegedly owed to the Bank. Defendants filed a counterclaim and an amended counterclaim. Plaintiff moved for summary judgment as to both its case in chief and the amended counterclaim. This Court will grant plaintiff's motion as to the case in chief and deny that motion as to the counterclaims, except insofar as the counterclaims are precluded, as discussed *infra*.

## I

### *Facts*

The following facts are, in all material respects, undisputed: The Bank instituted this action on October 18, 1990, to collect the remaining balance allegedly owed under a promissory note ("the note"), signed by the Traenkles and dated August 22, 1989, in the principal amount of $850,000. The note was part of a transaction in which the proceeds of a loan made by the Bank were disbursed to Egg Harbor Yacht Company ("Egg Harbor"). Robert Traenkle was chairman of the board of Egg Harbor. Payment of the note was secured by a security interest in, and by a preferred ship's mortgage on, a yacht known as the "Honey Bear," which originally was owned by Egg Harbor. In the late summer or early fall, 1990, the Traenkles defaulted on the loan.

On October 31, 1990, J.D. Tubbs, a former captain of the Honey Bear, brought an admiralty action against the Honey Bear in the United States District Court for the Southern District of Florida ("the Florida court") for nonpayment of wages. Pursuant to 46 U.S.C. § 31325, the Bank filed an intervening complaint in that Florida action against the Honey Bear *in rem* and against the Traen-

kles *in personam.* The Bank sought both foreclosure of the mortgage on the Honey Bear and damages from the Traenkles. The Traenkles were personally served with a summons and a copy of the intervening complaint on December 12, 1990, at their residence in Pennsylvania.

Tubbs' claim subsequently was dismissed by the Florida court, and the Bank became the sole plaintiff in the admiralty action. The Traenkles did not appear or file an answer on behalf of either themselves or the Honey Bear. On February 12, 1991, the Florida court entered a default judgment against the Traenkles and the Honey Bear. On March 23, 1991, the Florida court entered a final *in personam* judgment for the balance due on the note against the Traenkles and also a final *in rem* judgment against the Honey Bear, and directed the United States Marshal to sell the Honey Bear. The Traenkles were appropriately sent copies of the judgments and notice of the impending sale.

At a marshal's sale on April 23, 1991, the Bank, as the highest bidder, purchased the Honey Bear for $550,000. On April 30, 1991, the Florida court entered an order confirming the sale. On August 2, 1991, the Florida court credited the proceeds of the sale against the *in personam* judgment, and entered a final deficiency judgment ("the final deficiency judgment") in the amount of $406,035.59 in connection therewith.

The Bank then attempted to enforce the final *in personam* deficiency judgment in Pennsylvania, where the Traenkles own property. On June 10, 1991, the Bank recorded the final deficiency judgment with the Court of Common Pleas for Bucks County, Pennsylvania ("the Pennsylvania court"). On October 21, 1991, the Traenkles filed a petition with the Pennsylvania court to strike the final deficiency judgment on the grounds that the Florida court lacked personal jurisdiction over the Traenkles and that the final deficiency judgment was not entitled to full faith and credit. On September 17, 1993, the Pennsylvania court entered a one-sentence order striking the final deficiency judgment. As will be discussed *infra,* the Pennsylvania order apparently did not relate in any way to the *in rem* portion of the Florida judgments.

Meanwhile, the within Bank's action to collect on the note remained pending in this Court. The Traenkles filed a counterclaim and, subsequently, an amended counterclaim, alleging breach of contract, duty of good faith and fair dealing (Count I), conversion (Count II), punitive damages (Count III) and breach of fiduciary duty (Count IV). Judge Howard of this Court deferred ruling on the Bank's motion to dismiss certain counts of the amended counterclaim, pending resolution of the Pennsylvania action, and closed the case on February 11, 1992. This Court reopened the case on May 30, 1995, at the request of the Bank.

## II

### Summary judgment

▮ Summary judgment is appropriate when "there is no genuine issue of material fact and [when] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984). The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir. 1987). Any party resisting summary judgment must "go beyond the pleadings and by [its] own affidavits, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## III

### Plaintiff's case in chief

▮ The promissory note contains a clause stating that Maryland law will govern the application of the note, except where preempted by federal law, and both parties now agree that Maryland law should apply. Courts will generally enforce the agreement of the parties as to which law will apply. *See Kronovet v. Lipchin,* 288. Md. 30, 43–45, 415 A.2d 1096 (1980) (Rodowsky, J.). According-

ly, this Court will look to Maryland law to construe the note.

■ On its face, the promissory note indicates that the Traenkles are personally liable pursuant to its terms. The note contains no indication that either Robert or Christine Traenkle signed in any capacity other than as individuals. Robert Traenkle was chairman of the board of Egg Harbor at the time he signed the loan documents, but the promissory note does not refer to Egg Harbor or to Robert Traenkle's position or capacity as chairman.

■ Defendants contend that the note was part of a broader financing arrangement and that the Bank had orally assured the Traenkles that Egg Harbor was responsible for making payments on the note.[1] That contention requires this Court to consider the parol evidence rule, under which "in the absence of fraud, duress or mistake ... parol evidence of conversations or alleged oral agreements made before or at the time of the integration of the contract into the writing must be excluded from evidence ..." *Foreman v. Melrod,* 257 Md. 435, 441, 263 A.2d 559 (1970). The rationale for excluding such evidence is that a "different rule would increase the temptations to commit perjury and often render instruments of little value. All prior and contemporaneous negotiations are merged in the written instrument, which is treated as the exclusive medium for ascertaining the extent of their obligations." *Id.* at 441, 263 A.2d 559 (quoting *Markoff v. Kreiner,* 180 Md. 150, 154–55, 23 A.2d 19 (1941)).

■ In applying the parol evidence rule, courts first look to determine whether the contract at issue is fully integrated. Integration is a preliminary question to be determined by the trial judge, rather than the finder of fact, upon consideration of all relevant evidence. Restatement (Second) of Contracts § 209(2) & cmt. c (1981). "Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." Restatement (Second) of Contracts § 209(3) (1981). In the within case, the writing, on its face, appears to be a complete expression of the parties' intent, and defendants therefore have the burden of showing that the written documents did not constitute a final expression of the agreement. Defendants contend that the parties' course of dealing indicates an intent to make Egg Harbor, not the Traenkles, liable on the note. They argue that the Traenkles were merely a straw man and that the real parties to the transaction were Egg Harbor and the Bank. They note, for example, that Egg Harbor, not the Traenkles, made payments on the yacht before the default. They assert, without providing the type of support required under Federal Civil Rule 56, that the Bank communicated solely with Egg Harbor officials—and not with either of the Traenkles—with regard to the loan and the default. They assert, again without proper Rule 56 support, that the Bank did not title the Honey Bear in the Traenkles' names for more than a year, even though the Bank reserved the power so to do. Finally, defendants point out that the note does not contain an integration clause.

Defendants have failed to support their assertions with the types of affidavits or other documentary support required under Federal Civil Rule 56. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. Furthermore, even if this Court were to accept defendants' unsupported assertions as true, this Court nonetheless would conclude that the note was the final, complete agreement of the parties. Defendants would have this Court substitute the name of Egg Harbor for the Traenkles' names on the note, and thereby relieve the Traenkles of any responsibility for the note they signed. The contract is a straightforward promissory note which contains nothing to indicate that the parties intended such a result. Defendants' contentions about the nature of the transaction cannot be reconciled with the written instrument. As chairman of the board of Egg Harbor, Robert Traenkle seemingly was a reasonably sophisticated businessman, and defendants have

---

1. Egg Harbor has apparently filed for bankruptcy, and is not a party to this case.

provided no evidence to the contrary.[2] Defendants have given this court no reason to think that the Traenkles did not consider the written agreement to be complete and binding as to them.[3] This Court therefore concludes that the promissory note was an integrated contract, to which the parol evidence rule applies.

*Foreman, supra,* which involved similar facts, demonstrates the proper application of the parol evidence rule to an integrated contract. In *Foreman,* the defendant-makers of a promissory note contended that the parties had made contemporaneous oral agreements that the note was to be collected from the defendant-makers only after the exhaustion of other legal remedies. The Court of Appeals of Maryland concluded that the trial court properly barred consideration of those oral agreements and that, therefore, no dispute existed as to any material facts. *Foreman,* 257 Md. at 446, 263 A.2d 559.

Applying the parol evidence rule in a similar manner in the within case, no dispute of material fact exists to prevent summary judgment as to the Bank's claim on the note. The Traenkles have not disputed that they signed the promissory note or that the claimed unpaid balance remains on the note following the sale of the Honey Bear.[4]

▮ Defendants contend that the contract is void or voidable on account of fraud and note that fraud negates application of the parol evidence rule. *Foreman,* 257 Md. at 441, 263 A.2d 559. One of the elements of fraud in Maryland is that the complaining party "not only relied on the representation but *had a right to rely upon it* with full belief in its truth." *Everett v. Baltimore Gas & Elec. Co.,* 307 Md. 286, 300, 513 A.2d 882 (1986) (emphasis added). Here, where the unambiguous terms of the written agreement indicate that the Traenkles, not Egg Harbor,

were liable on the note, the Traenkles hardly have any "right to rely" on any representation by the Bank to the contrary. Robert Traenkle was chairman of the board of Egg Harbor at the time of the contract; he was seemingly more than enough sophisticated to understand the significance of his signature on the promissory note. Furthermore, in Maryland, the party alleging fraud must prove it by clear and convincing evidence. *Everett,* 307 Md. at 300, 513 A.2d 882; *see also* 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.5 at 227–28 (1990) ("courts have often said that the trier of fact must find mistake or fraud by 'clear and convincing evidence' before a writing will be reformed"). Even if defendants are given the benefit of all reasonable inferences, as a matter of law, they have not proffered facts supporting fraud by a preponderance of the evidence, much less by clear and convincing evidence.

▮ Defendants further contend that the contract is void or voidable on account of illegality. "Unenforceability of a contract because of illegality is a function of the strength of the public policy involved together with the degree of the violation of that policy under the facts of the case." *Citara-Manis v. Hallowell,* 328 Md. 142, 158, 613 A.2d 964 (1992) (Karwacki, J.). Defendants have alleged that the Bank violated 18 U.S.C. § 656 ("Theft, embezzlement, or misapplication by bank officer or employee") when it loaned money to the Traenkles with the knowledge that the proceeds would be turned over to Egg Harbor who, because it had reached the Bank's lending limits, could not be loaned any more money. Defendants have not provided any specific factual support for that allegation, as they must do to withstand the Bank's summary judgment motion, nor any explanation as to how the policy underlying § 656 would be furthered

---

2. The Bank has also stated that Robert Traenkle was a member of the boards of several banks. If so, that status would further indicate that Robert Traenkle was a sophisticated businessman. The Bank, however, has not supported that assertion in accordance with Federal Civil Rule 56.

3. Indeed, the Traenkles seemingly benefited from the transaction because of their apparent interest in Egg Harbor.

4. The Traenkles contest certain matters surrounding the sale of the Honey Bear. Those issues, however, do not affect the liability of the Traenkles as to the note itself and will be discussed *infra* in this opinion.

by refusal to enforce this contract against defendants. In that light, this Court concludes that the contract is not unenforceable on account of illegality.

Defendants rely on *Smith v. Rosenthal Toyota, Inc.,* 83 Md.App. 55, 573 A.2d 418, *cert. denied,* 320 Md. 800, 580 A.2d 219 (1990), but that case is distinguishable. In *Smith,* a customer had signed a contract of sale for a truck, but the dealer allegedly had assured the customer that the sale would not become final until after the customer took the truck home for a test and after the customer's wife had consented to the transaction. When the dealer refused to allow the customer to return the truck after the weekend, the customer sued, *inter alia,* for fraud. The trial court granted the dealer's motion for summary judgment, and the Court of Special Appeals of Maryland reversed in relevant part. Judge Wilner, writing for the court, said that the parol evidence rule did not exclude the evidence of the dealer's assurances. He cited the rule that "the parol evidence rule does not prevent the introduction of parol evidence indicating that the written instrument was not to become *effective as an instrument,* until a prior condition or event had occurred." *Id.* at 62, 573 A.2d 418 (emphasis in original) (quoting *Foreman v. Melrod,* 257 Md. at 442, 263 A.2d 559; *Saliba v. Arthur F. Charlotte, Inc.,* 259 Md. 588, 593, 270 A.2d 656 (1970)). No such condition precedent operated in the within case to prevent the contract from becoming effective. Accordingly, *Smith* is not controlling.

## IV

### *Defendants' counterclaims*

■ Defendants' four counterclaims all relate to the Bank's actions with regard to the possession and sale of the Honey Bear. Plaintiff argues, *inter alia,* that those counterclaims are precluded as a result of the Florida court's *in rem* judgment against the Honey Bear. For the reasons that follow, this Court concludes that the Bank is entitled to partial summary judgment in that regard.

■ As a preliminary matter, both parties have suggested that Maryland law governs the question of the preclusive effect of the Florida judgment against the Honey Bear. Since the question at hand is the effect of the judgment of a federal court sitting in Florida, full faith and credit would seem to require looking either to Florida law or to federal law. Courts have struggled with the question of whether state or federal rules of preclusion apply when a federal court, sitting in diversity, considers the effect of a ruling of another federal court, sitting in diversity. In general, "[f]ederal law determines the effects under the rules of res judicata of a judgment of a federal court." Restatement (Second) of Judgments § 87. Both the Restatement and some commentators, however, suggest that at least in some contexts federal courts should apply state preclusion rules. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4472 at 732–38 (1981); Restatement (Second) of Judgments § 87 cmt. b. As will be discussed *infra,* in at least one case involving similar facts, *Bryant v. Am. Nat. Bank & Trust Co. of Chicago,* 407 F.Supp. 360 (N.D.Ill.1976), a federal court, sitting in diversity, looked to state law to determine the effect of an order of a federal bankruptcy court. In any event, whether this Court applies federal or state preclusion rules, the Traenkles would appear to be precluded from relitigating the issue of the sale and disposition of the Honey Bear.

■ Under general principals of issue preclusion, "a valid and final judgment in an action based only on jurisdiction to determine the interests in a thing . . . is conclusive as to those interests with regard to all persons if the judgment purports to have that effect (traditionally described as 'in rem')." Restatement (Second) of Judgments § 30(1). The Florida court's judgment against the Honey Bear is a valid and final *in rem* judgment. The court's order confirming the sale, though separate in form from the *in rem* judgment, was part of the same proceeding and would seem entitled to similar preclusive effect.

■ Furthermore, § 9–507(2) of the Uniform Commercial Code (UCC), which both Florida and Maryland have adopted, provides that "[a] disposition which has been approved

in any judicial proceeding ... shall conclusively be deemed to be commercially reasonable." Section 9–507(2) was designed in large part to give creditors a means to dispose of property without subjecting themselves to undue liability. *See* Md.Com.Law Code Ann. § 9–507(2), cmt. 2; *Bryant,* 407 F.Supp. at 364.

Courts have construed § 9–507(2) to preclude relitigation of commercial reasonableness. In *Bryant,* the creditor sold shares of stock which had been pledged by the debtor as collateral to secure several loans. After a hearing which all parties or their representatives apparently attended, a federal bankruptcy court approved a sale of the stock under certain conditions. The creditor thereafter conducted the sale and, as the only bidder, purchased the entire block of shares itself. The debtor then brought an action in federal district court, with jurisdiction based on diversity, and attacked the sale as commercially unreasonable. Judge Marshall rejected the debtor's argument, saying that the district court would review the sale only to the extent that noncompliance, fraud or overreaching was shown by the debtor. He wrote: "If the parties have had an opportunity for a thorough discussion of the sale's terms, it is appropriate to give the court's determination of reasonableness a conclusive effect." *Bryant,* 407 F.Supp. at 364. *Accord, Cramton v. Altus Bank,* 596 So.2d 902, 905 (Ala.1992).

In the instant case, on March 26, 1991, the Florida court ordered the marshal's sale of the Honey Bear and prescribed requirements for notice and bidding. After the sale, on April 30, 1991, the court approved the proceedings and directed the Marshal to transfer title. Those actions by the Florida court appear sufficient to trigger the conclusive presumption of commercial reasonableness under § 9–507(2).

Defendants argue that *FDIC v. Forte,* 94 A.D.2d 59, 463 N.Y.S.2d 844 (1983), suggests a different result. They contend that *Forte* established a distinction between a judicial sale and judicial approval under § 9–507(2). In *Forte,* however, the disposition in question never received post-sale judicial approval. Furthermore, in *Forte,* the judgment directing the sale "merely prescribed the form of the sale and not the manner in which it was to be conducted." *Forte,* 94 A.D.2d at 66, 463 N.Y.S.2d 844. The court specifically focused on the absence of details concerning "the manner in which the sale was publicized and the existence of bona fide competitive bidding." *Id.* at 66, 463 N.Y.S.2d 844. In the within case, the Florida court established requirements for notice and bidding procedures. Because the Florida court prescribed "the manner in which [the sale] was to be conducted," *Forte* does not control.

Defendants further argue that some courts have required "a full and fair hearing" before giving conclusive effect to judicial approval of a sale. They contend that because they did not participate in the Florida proceedings, the Florida court's approval should not be given preclusive effect. Although the Traenkles' position is not totally without merit, the weight of authority suggests that a contested hearing is not a prerequisite to proper judicial approval. In *Bryant,* a case on which the Traenkles rely, Judge Marshall focused primarily on the "fair *opportunity* to challenge a proposed disposition." *Bryant,* 407 F.Supp. at 365 (emphasis added). In the within case, defendants had adequate opportunity to challenge the sale of the Honey Bear. They have not contested the Bank's assertion that they were personally served with copies of the Bank's complaint in the Florida case, notice of the sale, and copies of all other pleadings in the case.[5]

5. The case law indicates that the Traenkles need not have been personally notified of the proceeding at all. Courts have stated that a pure *in rem* action binds all the world in its effect on the property brought within its jurisdiction. *See, e.g., Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1553 (11th Cir.1990). Under that line of cases,

[t]he whole world, it is said, are parties to an admiralty cause; and, therefore, the whole

world is bound by the decision.... Where [ ] proceedings are against the person, notice is served personally, or by publication; where they are *in rem, notice is served upon the thing itself* [by seizure]. This is necessarily notice to all those who have any interest in the thing, and is reasonable because it is necessary, and because it is part of common prudence for all those who have any interest in it, to guard that

■ The Pennsylvania ruling does not affect the applicability of the principles of issue preclusion to this case, although both sides agree that the ruling is entitled to full faith and credit by this Court. The Pennsylvania court struck only the final deficiency, *in personam* judgment against the Traenkles personally, which the Bank had filed in Pennsylvania. It did not (and seemingly could not) disturb the *in rem* judgment against the Honey Bear. Accordingly, that *in rem* judgment maintains its full preclusive effect.

■ To the extent the claims of defendants relate to the sale and disposition of the Honey Bear, those claims therefore are precluded. Defendants also claim, however, that the Bank damaged the Honey Bear during the period between repossession and the judicially approved sale. Those allegations would not appear to be precluded by the presumption that the sale itself was commercially reasonable.

■ The Bank argues, however, that defendants were required to assert those damage claims as part of the Florida action. If the Bank is correct, that theory would preclude all aspects of defendants' counterclaims, including the allegations of damage to the yacht. The Bank contends that under Federal Civil Rule 13(a), the Traenkles were required to assert those claims as compulsory counterclaims in the Florida action, even though the Traenkles maintained that the Florida court lacked personal jurisdiction over them. Rule 13(a) provides in relevant part that "[a] pleading shall state as a counterclaim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require the presence of third parties of whom the court cannot acquire jurisdiction." Clearly, had the Florida court possessed personal jurisdiction over the Traenkles, their counterclaims would have been compulsory and their failure to bring them in Florida would have constituted a waiver of those claims. If they had so done, the filing and the pursuit of a

counterclaim seemingly would not have prevented them from simultaneously challenging the Florida court's personal jurisdiction over the party. *See Chase v. Pan–Pacific Broadcasting, Inc.,* 750 F.2d 131, 133–34 (D.C.Cir. 1984).

In any event, the Pennsylvania court's determination—which all parties agree binds this Court—would seem to abrogate any waiver of the counterclaims. If the Florida court lacked personal jurisdiction over the Traenkles for the purposes of the Bank's claim, it seemingly lacked personal jurisdiction for the purposes of any waiver of the counterclaims. *See Dragor Shipping Corp. v. Union Tank Car Co.,* 378 F.2d 241, 244–45 (9th Cir.1967) (where district court did not have personal jurisdiction for the purposes of the complaint, it, in that instance, "did not have in personam jurisdiction ... for any purpose").

■ Count I of the amended counterclaim alleges breach of contract, duty of good faith and fair dealing. "Under Maryland law, a duty of good faith and fair dealing is implied in certain contracts, but this duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract. Thus, the duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents." *Parker v. Columbia Bank,* 91 Md. App. 346, 365–66, 604 A.2d 521 (1992) (citations omitted). In this case, the security agreement allowed the Bank to repossess the Honey Bear and sell it in accordance with applicable laws. The proceeds of any such sale, after the Bank had recouped any costs of the repossession, storage and sale of the yacht, would go toward payment of the debt owed under the promissory note, with the Traenkles remaining personally liable for any deficiency. Since the proceeds of the sale were directly tied to the amount of the defi-

interest by persons who are in a situation to protect it.

*Id.* at 1553 (emphasis in original) (quoting *The Mary,* 13 U.S. (9 Cranch) 126, 144, 3 L.Ed. 678 (1815)).

ciency, the duty of good faith would appear to obligate the bank to maintain the condition of the Honey Bear between repossession and sale. If the actions or non-actions of the Bank inappropriately caused the Honey Bear to diminish in value during that period, the Bank would seem to be liable for such diminution. Whether such diminution occurred appears to be a disputed question of fact. Defendants claim, *inter alia*, that the Bank used the yacht for cruises, negligently allowed bilge pumps to break down so that the boat become flooded, and allowed certain equipment to be removed from the boat. Although some of these claims appear to be supported only by affidavits which may constitute inadmissible hearsay at trial, defendants have provided at least one item—an insurance document from the Bank's files—which discusses the deteriorating condition of the Honey Bear, including the flooding of the yacht. That document alone would appear to create a disputed question of fact with regard to the issue of whether the Bank breached its duty of good faith and fair dealing.

▇▇▇▇ Count II of the amended counterclaim alleges conversion. "In order to recover for conversion one must either have been in actual possession or have had the right to immediate possession in the converted asset." *B & O v. Equitable Bank*, 77 Md.App. 320, 327, 550 A.2d 407 (1988), citing, in support, to *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 64, 502 A.2d 1057 (1986).[6] In the within case, it is undisputed that the Bank had the right to repossess the Honey Bear after the default. Once in lawful possession, even if the Bank misused the yacht, it could not be liable for conversion. Defendants' claim for such misuse would seem to be proper not under conversion, but under breach of the duty of good faith, as discussed *supra*. Accordingly, plaintiff is entitled to summary judgment as to Count II.

▇▇▇▇ Count III of the amended counterclaim asserts a claim for punitive damages. Because this Court today concludes

that defendants' tort action do not survive summary judgment, the question becomes whether punitive damages are available for defendants' contract claim. "It is well-settled that damages [under a breach of contract claim] are those which arise naturally from the breach of contract itself, or those which can be shown to have been contemplated by the parties when they entered into the contract as the probable result of the breach." *Johnson v. Federal Kemper Insurance Co.*, 74 Md.App. 243, 248–49, 536 A.2d 1211 *cert. denied*, 313 Md. 8, 542 A.2d 844 (1988). "In an action for breach of contract alone, such as this one, punitive damages are not available even if the [complainant] can show actual malice." *Id.* at 249, 536 A.2d 1211. Accordingly, plaintiff is entitled to summary judgment as to Count III.

Count IV of the amended counterclaim alleges breach of fiduciary duty. "Courts have been extremely reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreements." *Parker*, 91 Md.App. 346, 369, 604 A.2d 521 (1992). Here, defendants have not carried their burden to show facts indicating that such a fiduciary relationship has existed. Accordingly, plaintiff is entitled to summary judgment as to Count IV.

### V

#### Conclusion

The Bank is entitled to summary judgment as to its claim for the remaining balance on the note. The Florida court calculated that the deficiency totalled $406,035.59. To reach that figure, the Florida court apparently added certain costs, interest, attorney fees and late charges to the principal amount owed on the note and then subtracted the $550,000 paid for the yacht at the foreclosure sale. Pursuant to the principles of issue preclusion, this Court is bound by the $550,000

---

6. If the conversion in fact occurred in Florida, or in a jurisdiction other than Maryland, Maryland, as the forum state, would apply the law of the state in which the tort occurred under the principle of *lex loci delicti*. *See White and White v.*

*King*, 244 Md. 348, 352–55, 223 A.2d 763 (1966). But that law would probably not be different than the law of Maryland. *See, e.g.*, Restatement (Second) of Torts § 222 A (1965).

figure. In light of the Pennsylvania court's ruling, however, this Court would not appear to be bound by the Florida court's conclusions with regard to deficiency, costs, interest, fees, and late charges. Accordingly, those issues remain open in this case.

Plaintiff is not entitled to summary judgment with regard to defendant's counterclaim for breach of contract, duty of good faith and fair dealing. To the extent, if any, the Bank caused damage to the Honey Bear between the time of repossession and sale, the Traenkles will seemingly be entitled to a reduction in their liability.

Plaintiff's motion for summary judgment is hereby granted in part and denied in part, as stated herein. This Court will provide further instructions regarding further pre-trial and trial procedures and scheduling in a separate memorandum to counsel of even date herewith.